Miller, Executor, *v.* Shields.

with directions to enter the proper order declaring the same a preferred claim.

. Filed May 29, 1890.

———————◆———————

No. 14,215.

## MILLER, EXECUTOR, *v.* SHIELDS.

MARRIED WOMAN. — *Suretyship.* — *Burden of Proof.* — Where a married woman is sued upon her individual note, which is secured by a mortgage on her separate real estate, her ,husband joining, the burden is upon her to show her suretyship, since it will not be presumed that she occupies the relation of surety, or guarantor, but that fact must be established by affirmative evidence.

From the Jackson Circuit Court.

*J. F. Applewhite* and *R. Applewhite*, for appellant.

*B. H. Burrell,* for appellee.

BERKSHIRE, C. J.—This action is bottomed on a promissory note executed by the appellee to the appellant's testator. · The appellee answered in three paragraphs :

*First.* The general denial.

*Second.* Want of consideration.

*Third.* Coverture and suretyship.

The appellant replied in general denial.

The cause was submitted to the court for trial, and after the evidence had been concluded a finding was returned in favor of the appellee.

The appellant filed a motion for a new trial, which was overruled by the court and an exception saved, and judgment rendered for the appellee.

The record presents but one question for our consideration : Is the finding of the court sustained by sufficient evidence ?

Notwithstanding the well established rule of this court

that it will not disturb the judgment of a trial court because the evidence which supports it is weak and unsatisfactory, we are compelled to reverse the judgment here involved for the reason that there was a failure of proof as to one vital fact.

In Indiana, since the year 1881, the disabilities which the common law imposed upon married women as to the making of contracts, with certain limitations, have been removed. Sections 5115, *et seq.*, R. S. 1881.

As this court has frequently announced, ability, and not disability, is the rule as to the capacity of married women to enter into contracts. *Vogel* v. *Leichner*, 102 Ind. 55. In this case it is said : " By the more comprehensive enactment of 1881, above referred to, the Legislature abrogated all the legal disabilities of married women except such as are expressly saved in the act."

In *Rosa* v. *Prather*, 103 Ind. 191, it is said : " The three most notable respects in which the disability of coverture was felt at common law were, in the inability of the wife to sue, in her inability to enter into a contract, and in her inability to control her own property. These separate disabilities have all been, in general terms, removed. * * * The disabilities upon these and other subjects which still remain are special and exceptional, and no longer constitute a part of a category of general disabilities." In *Arnold* v. *Engleman*, 103 Ind. 512, it is said : " The question here is as to the sufficiency of the facts pleaded to avoid the disability of coverture. We have decided that in cases of married women ability is now the rule and disability the exception. This is the only reasonable interpretation of our statute, for its language is broad and comprehensive. Section 5115 provides that 'All the legal disabilities of married women to make contracts are hereby abolished, except as herein otherwise provided.' This confers a general power to make executory contracts except such as are prohibited by the statute. There is no provision prohibiting married

women from purchasing wearing apparel and executing notes for its value. It is true, that in section 5117 it is provided that she may make contracts concerning her separate personal property, but this is merely permissive and cumulative, and is not a limitation upon the general power conferred by the section quoted. It would be a great stretch to affirm that in buying personal property she was not contracting concerning it, and if the provision found in section 5117 stood alone it would be quite doubtful whether a married woman's contract for the purchase of wearing apparel for herself were not valid, but the provision of section 5115 makes it very clear that such contracts are valid and enforceable. Our conclusion is that a married woman may purchase wearing apparel for herself, and that notes executed by her for the price which she agreed to pay for it, are valid and may be enforced." See *Barnett* v. *Harshbarger*, 105 Ind. 410. In *McLead* v. *Ætna L. Ins. Co.*, 107 Ind. 394, this court said : " The notes and mortgage were jointly executed by the appellant on the 18th day of November, 1882, at which time the act of April 16th, 1881, concerning husband and wife, which took effect on September 19th, 1881, was a part of the law of this State." Section 5115 of said statute is then set out, and the court go on to say: "In *Arnold* v. *Engleman*, 103 Ind. 512, after quoting section 5115 as above, the court said : ' This confers a general power to make executory contracts except such as are prohibited by the statute.' In section 5117, R. S. 1881, it is provided that a married woman ' shall not enter into any executory contract to sell or convey or mortgage her real estate, nor shall she convey or mortgage the same unless her husband join in such contract, conveyance, or mortgage.' Section 5119, R. S. 1881, reads as follows : 'A married woman shall not enter into any contract of suretyship, whether as endorser, guarantor, or in any other manner ; and such contract, as to her, shall be void.' " See *Lane* v. *Schlemmer*, 114 Ind. 296 (bottom of page 301).

In *Phelps* v *Smith*, 116 Ind. 387 (402), it is said : " The decision in *Phipps* v. *Sedgwick*, 95 U. S. 3, if conceded to be otherwise relevant, is not in point, because the court placed its judgment upon the disability created by coverture, saying that ' such a proposition would be a very unjust one to the wife still under the dominion, control, and personal influence of her husband.' Manifestly this rule can not apply in jurisdictions where a married woman possesses nearly all of the rights of a *feme sole*, and where ability is the rule and disability the exception."

In the quotation which we have made from *Arnold* v. *Engleman*, *supra*, said section 5115 is set out, and we need not copy it again.

The exception involved in the case now under consideration is found in section 5119, which section appears in the quotation from *McLead* v. *Ætna L. Ins. Co.*, *supra*, and need not be again quoted.

It is a general rule of pleading, applicable alike to civil actions and criminal prosecutions, that where an exception or proviso is embodied in the enacting clause of a statute, or in a contract, it must be negatived in the complaint, or indictment ; but if it is found in a subsequent distinct clause or section of the statute, or covenant, as is the case with the statute before us, then there need be no negation. Gould Plead. pp. 514, 515 ; Stephen Plead. (Heard), pp. 443, 444.

In *Commonwealth* v. *Jennings*, 121 Mass. 47, GRAY, C. J., speaking for the court, said : " On the other hand, it appears to us to be established, by a great preponderance of authority, that when an exception is not stated in the enacting clause otherwise than by merely referring to other provisions of the statute, it need not be negatived, unless necessary to a complete definition of the offence."

In *Hart* v. *Cleis*, 8 Johns. 41, the court said : " The action below was brought for a penalty incurred under the 6th section of the *act concerning slaves and servants*. The special

causes of demurrer stated upon the record, are not material; but the defendant relies upon what he alleges to be defects, in substance, in the declaration, viz. that the plaintiff does not negative the excepted cases in the section, and that he does not aver that the defendant was master of the slave, or acted with his privity. It is a sufficient answer to the first objection, that the exception forms no part of the plaintiff's title or right of action, but is merely matter of excuse for the defendant. The excepted cases are not incorporated into the body and substance of the enacting clause; but are given as exceptions, and the instances are not specified in that, but in the subsequent sections." See *Commonwealth* v. *Tuttle*, 12 Cush. 502; *Commonwealth* v. *Hill*, 5 Gratt. 682; *State* v. *Miller*, 24 Conn. 522; *United States* v. *Cook*, 17 Wall. 168; *State* v. *Abbey*, 29 Vt. 60; *Fleming* v. *People*, 27 N. Y. 329; *Harris* v. *White*, 81 N. Y. 532. Our own cases are to the same effect. *Russell* v. *State*, 50 Ind. 174; *State* v. *Maddox*, 74 Ind. 105; *Mergentheim* v. *State*, 107 Ind. 567.

The action in this case was upon a promissory note executed by the appellee alone.

The complaint did not allege that the appellee was under coverture, but had the fact appeared therein we think it would have been good in the absence of an allegation in negation of section 5119, *supra*. We think so in view of the rule as supported by the authorities cited above.

The precise question has never been before this court. It was held in the case of *Vogel* v. *Leichner*, *supra*, that when the husband and wife jointly executed a promissory note and a mortgage upon the separate real estate of the wife, the burden of proof was on the plaintiff seeking to foreclose the mortgage to show that she was liable.

The foregoing case was followed in the case of *Cupp* v. *Campbell*, 103 Ind. 213.

In that class of cases the presumption which naturally arises because of the peculiar relation that exists as between husband and wife, is that he is the principal debtor, and she

but his surety, and hence it was well ruled in those cases that the obligation could not be enforced against her, nor against her property specifically pledged for its payment, it not appearing affirmatively that she was a principal debtor. But when a married woman, as she has full power to do under the married women's act, executes her individual note, whereby she promises to pay a given sum of money, the question is very different. No presumption such as that announced in the cases above can prevail.

To hold that when a married woman executes her individual promissory note she is presumed to stand as surety for her husband or some other person until the contrary is made to appear, would be to carry the doctrine of presumptions beyond the border line.

It is quite difficult to imagine the relation of principal and surety without a principal, and equally so to find a substantial reason on which to rest the presumption that whenever a married woman executes her individual promissory note she occupies the position of a surety for her husband or some other person. It is true that it may be shown that the individual note of a married woman was given solely for the benefit of the husband or some one else, but when this is claimed by her it must be made to appear affirmatively.

The following cases, we think, support our conclusion: *Arnold* v. *Engleman, supra,* was an action on a promissory note executed by a married woman alone, and included an account for merchandise sold and delivered to her. And at this point, we feel that it is not improper to quote for the second time a small portion of what was said by the court in that case : " It would be a great stretch to affirm that in buying personal property she was not contracting concerning it." But it would not be more so than to presume when a married woman executes her separate promissory note, reciting that for value received she promises to pay so many dollars, that the consideration has moved to some one else and that she has received no benefit therefrom. In *Mc-*

*Lead* v. *Ætna L. Ins. Co., supra,* at page 396, the court said: " Except as prohibited in these two sections, 5117 and 5119, a married woman had and has the same power to make executory contracts, and was and is as *much bound thereby,* as if she had been or was unmarried at the time of their execution. If the appellee's complaint, in the case in hand, had shown that the appellant Malinda was the surety of her co-appellant in the notes in suit, or that the mortgaged real estate was her separate estate, it would have been necessary, perhaps, to have alleged the further fact, in order to state a cause of action against her, that she had received either in person or in benefit to her estate the consideration of such notes and mortgage, or some part thereof. But as no such showing was made in the complaint it was sufficient to withstand appellant's assignment of errors, and would have been good, we think, even upon demurrer for the alleged want of facts." In *Bennett* v. *Mattingly,* 110 Ind. 197, at page 199, NIBLACK, J., for the court, said: "An argument is submitted against the sufficiency of the complaint upon demurrer, upon the ground that it showed Mrs. Dingman to have been a married woman at the time she executed the notes and mortgage, and did not aver a state of facts creating a liability on her part, notwithstanding the disabilities imposed by her coverture. This would, at one time, have been a valid objection to the complaint, but the law in that respect has been materially changed by the Revised Statutes of 1881. Coverture is no longer a legal disability in this State, except in some special cases, and, hence, upon the facts averred, *no disability on the part of Mrs. Dingman could have been fairly presumed.* The complaint was, consequently, sufficient upon demurrer."

In view of these authorities no such presumption can arise as that contended for by the appellee. But *Elliott* v. *Gregory,* 115 Ind. 98, is still a much stronger case against the said contention. There a married woman was sued for medical services rendered to her at her special instance

and request and upon her express promise to pay for the same. She answered coverture, averring in addition that the debt was her husband's, for the reason that she could not enter into a binding contract for such services.

The answer was demurred to, the cause of demurrer being want of facts, which was overruled; this court reversed the ruling of the trial court, and said : " It was an answer in confession and in avoidance. It impliedly admitted the rendition of the services sued for, and Mrs. Gregory's promise to pay for the same, and then set up her coverture as a protection against her liability to pay for such services. These made the pleading a formal, as well as a substantial, answer of coverture to the action. This, under existing statutes and our decisions upon them, was not a good defence to the complaint." Section 5115, *supra,* is then quoted, and the court go on to say : " In the construction of this section we have held that a married woman's ability to contract is now the rule, and that her disability to do so constitutes the exception. The answer under consideration did not base Mrs. Gregory's defence upon any of the exceptional disabilities still imposed on married women. On the contrary, the allegations of the complaint, which were impliedly admitted by the answer, made a case affirmatively in which coverture was no disability." That case seems to cover the case at bar.

Here the gravamen of the action, as we have already said, is a promissory note, and at this point we desire to set the note out :

" $500.         BROWNSTOWN, January 25th, 1883.

"One year after date I promise to pay to the order of Henry G. Smith five hundred dollars, for value received, without any relief whatever from valuation or appraisement laws, with eight per cent. interest from date until paid, and attorney's fees.         ISABELLA SHIELDS."

In the case at bar, as in the case last cited, the promise is the express and individual promise of a married woman, and

differs only in the fact that in the former case the promise rested in parol, while in the present case it is in writing.

In the former case the character of the consideration upon which the promise rested is stated, as was necessary, because of the fact that the promise rested in parol ; but in the case at bar the action is bottomed upon a written obligation, which implies a consideration.

Who is presumed to have received the consideration? Necessarily the party who executed the instrument.    The question of consideration can only be of consequence to the parties to the obligation.    Whether others were, or were not, benefited because of the giving of the obligation is wholly unimportant, because in no event can it be enforced against them.    But the obligation here sued upon, upon its face expressly states that the note was given for value received.    Value received by whom?    The note itself states, " I promise to pay," etc., " for value received ; " value received by the promisor.

But suppose in the last cited case the answer had been good, and at the point where it failed the proof had failed, the result must necessarily have been the same.    Why the same?    Because in an action upon the separate and express promise of a married woman, where a valuable consideration appears, the burden is upon her to show that she is not liable. And we think it can make no difference whether the consideration is affirmatively shown, or arises by implication ; but the principle here involved has been further settled by this court against the contention of the appellee.

In *Security Co.* v. *Arbuckle,* 119 Ind. 69, Matthew and Mary E. Arbuckle, husband and wife, owned by entireties certain real estate ; they executed their joint notes and a mortgage upon the said real estate to secure the same ; the application for the loan for which the note and mortgage were executed, was executed by them jointly.    The mortgagee drew his check for the money loaned to them jointly, but delivered it to Matthew Arbuckle, the husband, and he

drew the money. The special finding of the court failed to show for what purpose the money was borrowed or how used. The court said: "The mortgaged estate being the joint property of both, and the loan having been made on the joint application of both mortgagors, the burden is upon them to make it appear that the consideration of the notes was not obtained and used for the benefit of the joint estate. This is not the case of a married woman mortgaging her separate estate to secure a debt *which appears to be the obligation of herself and another.* This is the case of the owners of a joint estate who joined in a mortgage thereon *to secure the apparent obligation of both,* and it must affirmatively appear that the debt was not for their joint benefit." The reasoning in that case meets the question before us.

This is not the case of a married woman mortgaging her separate estate to secure the *apparent* debt of herself and another, but it is her separate obligation that she is sued upon and *apparently* her own debt, and hence the burden is on her to show that her husband and not herself received the consideration for the note. See *Jenne* v. *Burt,* 121 Ind. 275. And we may add further, that we have found no case where a married woman has been sued on her individual promise in which she has been discharged on the ground of coverture and suretyship, except where it has appeared upon the face of the obligation that she occupied the relation of a surety or guarantor, or when the fact has been established by affirmative evidence.

The appellee's husband testified as a witness, in her behalf, to a conversation which he had with the executor and to the payment of interest due on the note, but there is nothing in his evidence to show to whom the consideration for the note moved. In fact the transaction with the executor after the testator's death, or what may have been said by him, could not have been considered by the court as tending to throw light upon the original transaction.

The executor was called as a witness by the appellee, but he made no statement material to the question in issue.

The appellee was called as a witness in her own behalf, but testified to nothing material to the issue.

The note sued on was secured by a mortgage on the separate real estate of the wife. It is true it was executed jointly by the appellee and her husband, but this could not be otherwise, for she could not mortgage her estate to secure any debt which she might contract except her husband joined in the mortgage.

For the error in overruling the motion for a new trial, the judgment must be reversed.

Judgment reversed, with costs.

MITCHELL, J., concurs in the conclusion reached, but not with all of the reasoning found in the opinion.

