CHRISTENSEN v. WELLS.

1. MARRIED WOMEN—CONSTRUCTION OF STATUTES—REVISED STATUTES, 2167—EVIDENCE.—The burden of showing that a contract comes under the exceptions mentioned in the *Proviso* to the married woman's act of 1891 (Rev. Stat., 2167) is on her.
2. IBID.—MORTGAGES.—The evidence here shows that the mortgage was executed to secure a debt for the erection of a house on the separate property of the wife, and it is liable for it.

Before GARY, J., Beaufort, January, 1898.    Modified.

Foreclosure by N. Christensen *v.* F. W. Wells and Mary Ellen Wells, as devisees of Mamie Wells.    Judgment for defendants.    Plaintiff appeals.

*Mr. W. J. Verdier*, for appellant, cites: *Agency may be implied:* 34 S. C., 175; 44 N. Y., 349; 68 N. Y., 400. *Contract with reference to separate estate of married woman binds such estate:* Rev. Stat., 2167; 31 S. C., 138; 17 S. E. R., 782; 43 S. C., 287; 45 S. C., 651; 21 S. E. R., 155. *Wife's separate estate received benefit of debt, and she is principal debtor:* 1 Sandf. Ch., 214; 102 Ind., 55; 1 McC. Ch., 443. *Married woman is estopped from denying valid contract:* 36 S. C., 468.

*Mr. Thos. Talbird*, contra, cites: *Finding of fact by Circuit Judge will not be reversed except where clear result of all testimony points to contrary:* 41 S. C., 546; 51 S. C., 420. *Married women's acts:* Gen. Stat., 2037; 19 Stat., 819; 20 Stat., 1121; Rev. Stat., 2167.

July 5, 1898.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER.    This was an action to foreclose a mortgage given by the deceased devisor, Mamie Wells, to secure the payment of her bond to the plaintiff, conditioned for the payment of $946.    The undisputed facts are, that on the 17th of September, 1894, the said Mamie Wells executed the said bond and mortgage, which covered

a lot in the town of Beaufort, the separate property of the said Mamie Wells; that the said Mamie Wells was, at the time, a married woman, the wife of the defendant, F. W. Wells; that $850 of the said bond was for the building of a house by plaintiff upon the said lot—the separate property of Mamie Wells; that the said Mamie Wells, having first duly made and executed her last will and testament, whereby she devised the said lot to the defendant, F. W. Wells, her husband, and the defendant, Mary Ellen Wells, departed this life on the 19th of July, 1896, leaving in full force her said will, and that the defendants are in possession, as her devisees, of the said lot; and the only real issue in the case is, whether the debt represented by the bond and mortgage is the debt of the said Mamie Wells, or the debt of her husband, the defendant, F. W. Wells, for which she executed the bond and mortgage which constitute the basis of this action. Upon this issue the Circuit Judge found in favor of the defendants, and rendered judgment dismissing the complaint. From this judgment plaintiff appeals upon the several grounds stated in the record, which need not be set out here, as the only question presented is, whether there was any error in holding that the debt, represented by the bond and mortgage, was, in fact, the debt of the husband to secure the payment of which the wife executed her own bond and mortgage.

This question arises under, and is to be determined by, the provisions of the act of 1891, 20 Stat., 1121, now incorporated in the Rev. Stat. of 1893 as sec. 2167. That act, after declaring that: "A married woman shall have the right to purchase any species of property in her own name, and to take proper legal conveyances therefor, and to bind herself by contract, in the same manner and to the same extent as though she were unmarried, which contract shall be legal and obligatory, and may be enforced at law or in equity by or against such married woman, in her own name, apart from her husband," contains the following *proviso:* "That nothing herein shall enable

such married woman to become an accommodation indorser, guarantor or surety, nor shall she be liable on any promise to pay the debt or answer for the default or liability of any other person." It will be observed that under this act a married woman, who is first invested with full and unlimited power "to bind herself by contract in the same manner and to the same extent as though she were unmarried," is afterwards, in the *proviso*, forbidden to make contracts of a certain character, to wit: contracts of suretyship, &c., and contracts by which she assumes a liability for the debt of another. When, therefore, it appears that the contract in question shows on its face that it was made by her, she becomes liable thereon, unless she can show that such contract is one of a character that she is forbidden by the *proviso* from making. In other words, the burden of proof is upon her to show that the contract in question is one of such a character as she had no power to make. See Potter's Dwar. on Stat., 118–20, as to the scope and effect of a *proviso*. In this respect the present law differs materially from the former law on the subject. Under the act of 1882, a married woman was only invested with power to make contracts of a certain character, to wit: contracts "as to her separate property," and hence, under that law, it was always held that in an action to enforce a contract made by a married woman, the burden of proof was upon the plaintiff, not only to show the execution of the contract, but also that it was of such a character as a married woman was authorized to make, to wit: a contract as to her separate property. Now, however, a married woman having been invested with general and unlimited power to contract, except in certain specified cases, the plaintiff, after proving the execution of the contract, is under no obligation to go further and prove negatively that it is not within any of the exceptions mentioned in the *proviso;* but the onus is upon the married woman, or those who represent her estate, to show, affirmatively, that the contract in question falls within some one of the exceptions mentioned in the *proviso*.

In the light of this doctrine, let us consider the testimony in the case, with a view to determine whether the defendants have shown by the preponderance of the evidence that the contract sought to be enforced was the contract of the wife to assume a liability for her husband's debts; for unless this appears, there was error in the judgment appealed from. There were but two witnesses, the plaintiff, and defendant, F. W. Wells, examined in the case before the master, who was required to take and report the testimony. While these two witnesses differed in their version of the transaction, we cannot escape the conclusion, after considering the whole of the testimony, that the defendants have failed to show by the preponderance of the evidence that the debt secured by the bond and mortgage, at least to the extent of $850, the contract price for building the house on the lot, which was conceded to be the separate property of Mrs. Mamie Wells, was the debt of her husband, but that it is shown that the remainder of said debt, to wit: the sum of $96, was the debt of her husband, for which her separate estate is not liable. The testimony of the plaintiff is, substantially, to the following effect: that prior to the execution of the bond and mortgage, he negotiated with F. W. Wells, "recognizing him as agent for his wife," the contract for building the house on his wife's lot; that soon thereafter Mrs. Mamie Wells came to his office and executed the bond and mortgage. This witness also testified to certain communications which passed between him and Mrs. Wells, which was objected to as inadmissible, under sec. 400 of the Code, and which were afterwards excluded by the Circuit Judge, to which no exception has been taken. That portion of the plaintiff's testimony has not been considered and need not be stated here. The plaintiff also testified that he furnished all of the material and labor for building the house, and that it was all done upon the faith of the bond and mortgage executed by her; that the house was completed in October or November, 1894, and that he knew at the time that the house was being built that it was

upon the separate property of Mrs. Wells, and that it was agreed at the time that he was to have a bond, secured by a mortgage on the lot, to secure the payment of the debt; this agreement having been made between plaintiff and F. W. Wells—Mrs. Wells not being then present—when the contract for building the house was negotiated. On the cross-examination the plaintiff testified, substantially, as follows: that he agreed to build the house for $850, and that the balance of the bond, to wit: the sum of $96, was for building material furnished to F. W. Wells himself; that the amount of $946 is entered on his books in the name of F. W. Wells; that F. W. Wells was coroner at the time, and that the payments previously testified to were made by certificates to F. W. Wells, as coroner; that the agreement marked exhibit B was made 21st September, 1894 (a copy of which is hereinafter given); "that I do not remember how long the contract was made for the building of the house before the execution of the bond and mortgage, I think a few days; that I am certain the work was not started before the mortgage was made; that no lumber was delivered on the lot on which the building was erected prior to the execution of the mortgage, to his recollection; that Fred. Wells owed me nothing outside of the amount stated in said mortgage."

The following is a copy of exhibit B, above referred to: "Beaufort, S. C., September 21, 1894. Whereas Frederick Wells is indebted to me in the sum of $946 for building material furnished under an agreement; and whereas he, being desirous of paying the whole or part of said debt in audited claims on the county for services rendered as coroner, I have agreed to take all such claims, which shall be paid out of this year's taxes at par, and all others thereafter at a discount of ten per centum, and the net proceeds of all such claims shall be placed to his credit on account. (Signed) N. Christensen." The testimony of the defendant, F. W. Wells, was as follows: "That I made a contract with Capt. Christensen for building the house in question.

That I contracted with Capt. Christensen himself for the building of the house in question, and did not tell him I was acting as the agent for my wife. I have no writing in regard to the contract except that in evidence as exhibit B. That the contract was made a few days before the execution of the bond and mortgage by my wife, that some bricks were put upon the lot and some pillars erected before my wife signed bond and mortgage; that I was responsible individually to Capt. Christensen for the payment of that debt; that about the time I was about to make the first payment, I said to Capt. Christensen, I wanted an agreement, and he said he would make the agreement, but that I should secure him by mortgage. I told him that I owed him before as high as $362, and gave him no mortgage. Captain said to me, this is more than you ever owed me before, and I want security. I told him I did not own anything except a very small house, worth about $150 or $200, and that the balance of the property was in my wife's name; he said your wife will have to sign for you, and on saying that, I said my wife will have to sign, as I do not own anything outside of a small house. A few days after that she came down and signed a mortgage in my presence and Capt. Christensen's. That Capt. Christensen did not tell me when the agreement was made, that my wife would have to sign the mortgage." On the cross-examination, "says this house was built on his wife's lot." From this testimony, it is apparent that the plaintiff built a house, at the agreed price of $850, on the lot which was the separate property of Mrs. Mamie Wells, after negotiation with her husband, F. W. Wells, whom he recognized and treated with as her agent; and that a few days afterwards, Mrs. Wells went to the office of plaintiff, and there executed the bond and mortgage in question, both plaintiff and her husband being present, when, so far as the testimony shows, nothing was said leading plaintiff to suppose that this good lady was assuming a debt of her husband. Very soon after the bond and mortgage were executed, the work was commenced, and the house was completed a short time there-

after, to wit: some time in October or November, 1894. This would be sufficient to fix a liability upon Mrs. Wells to pay for the house which had been erected upon her own separate property, upon the faith of her bond and mortgage to secure the payment of the contract price for building the house, the benefit of which she seems to have accepted and enjoyed up to the time of her death, a period of more than a year—inasmuch as the house was completed in October or November, 1894, and it is admitted that she died on the 19th of January, 1896. It is true, that F. W. Wells, in his testimony, does say that he *did not tell* plaintiff he was acting as the agent of his wife in making the contract for the building of the house, and the plaintiff does not claim that he so told him; but he does say that he negotiated the terms of the contract with her husband—"recognizing him as agent for his wife"—and this F. W. Wells does not deny, only saying that he was responsible individually. But the undisputed testimony of both the witnesses is, that, a few days after the terms of the contract had been agreed upon between the plaintiff and F. W. Wells, who was recognized as the agent of his wife, Mrs. Wells appeared at plaintiff's place of business and executed the bond and mortgage, in accordance with the terms of the contract; when, so far as the testimony—that is, the *competent* testimony—shows not a word was said indicating that Mrs. Wells was assuming any debt of her husband; but, on the contrary, all the circumstances show that she was securing the payment of her own debt, incurred for building a house on her own separate property. It is quite certain that the plaintiff built the house on Mrs. Wells' separate property after some negotiation with her husband, and it is equally certain that, a few days afterwards, Mrs. Wells went to plaintiff's place of business, and there executed the bond and mortgage to secure the contract price agreed upon. So that it is evident that F. W. Wells either negotiated the contract as agent for his wife, or he intended to build the house for his wife out of his own means; and this, his own testimony shows, he was

not able to do. In this connection it should be observed that F. W. Wells, in his testimony, says, "That about the time I was about to make the first payment," the plaintiff demanded a mortgage to secure the payment of the contract price for building the house; but this is manifestly a mistake, for the conceded fact is that the bond and mortgage were executed on the 17th of September, 1894, and the first payment was not due until the 1st day of November, 1894, about the time the house was completed. The defendants, however, mainly rely upon the terms of the paper marked exhibit B, hereinabove copied, to show that the debt in question was the debt of the husband and not the debt of the wife. In the first place, it will be noticed that this paper bears date on the 21st of September, 1894, four days after the execution of the bond and mortgage, which, it is conceded were executed on the 17th of September, 1894. It was at that date, and by the execution of those papers, that Mrs. Wells became liable to pay to the plaintiff the contract price for building a house on her own separate property, and what the plaintiff and her husband may have done four days afterwards, cannot have the effect of releasing her from liability for a debt, evidenced by her bond and mortgage, incurred for the improvement of her own separate property. Indeed, the terms of that paper do not even purport to release Mrs. Wells from the liability which she had previously incurred. The utmost that can be said is, that exhibit B tends to show that F. W. Wells thereby made an arrangement to pay the debt which his wife had previously incurred, in the manner therein specified. Even that can scarcely be said, for in that paper the debt spoken of is a debt "for building material furnished," whereas the previously incurred debt of Mrs. Wells was for building a house on her separate property.

We are, therefore, of opinion that the defendants have failed to show by the preponderance of the evidence that the debt evidenced by the bond and mortgage executed by Mrs. Wells, at least to the extent of $850, falls within any of

the classes specified in the first *proviso* to sec. 2167 of the Rev. Stat. of 1893. On the contrary, it seems to us that the facts and circumstances show that such debt, at least to the extent of $850, is the debt of Mrs. Wells, for which her separate estate is liable.

The evidence, however, does show that $96 of the amount mentioned in the bond and mortgage was the debt of the husband, F. W. Wells, for building material furnished to him individually; and for that much of the amount mentioned in the bond and mortgage the separate estate of Mrs. Wells is not liable. But it seems to us that the payments made by F. W. Wells, mentioned in the complaint, should first be applied to the payment of this $96, and only the excess of such payments should be applied on the debt due by Mrs. Wells.

The judgment of this Court is, that the judgment of the Circuit Court be modified as herein indicated, and that the case be remanded to that Court, with instructions to carry out the views herein announced.