WETMORE & MORSE GRANITE COMPANY *v.* JENNIE L. RYLE AND
JOSEPH G. BROWN.

February Term, 1919.

Present: WATSON, C. J., POWERS, TAYLOR, and MILES, JJ., and
FISH, SUPR., J.

Opinion filed May 6, 1919.

*Bills and Notes—Evidence—Notes Collateral to Issue—Corpora-
tions—Compensation to Director—Contracts of Married
Women—Surety for Husband—Burden of Proof—Indorse-
ment of Note—Presumption—Involuntary Payments—Re-
ceivership—Dividends—Application—Principal and Surety
—Discharge of Cosurety by Operation of Law—Appeal from
Commissioners—Effect—Release of Joint Obligor—Right
of Contribution—Measure of Contribution.*

In an action against a married woman on a corporation's note signed
on the back by her and her husband, and where she testified that
she signed only as surety for her husband, evidence that the
consideration of the note was the taking up of two former notes
was admissible in rebuttal without their production, since it had
a bearing on the capacity in which she signed the note, and the
two notes were collateral to the question at issue.

Plaintiff was properly permitted to show by parol that the two prior
notes were signed by the corporation and that neither of them had

other signers, since this went only to the extent of showing that such notes were made, as distinct from their terms or provisions.

A finding that the defendant, who was a stockholder and director of the company, received no direct benefit or value for signing the note except such as she may have received as a stockholder and director, when considered with the finding that she never received any dividend on her stock or anything on the winding up of the company's affairs, does not imply that she may have received some benefit or value indirectly as stockholder or director; the presumption being that, if the directors received anything, it was only by way of compensation for services rendered, and there being no presumption that they received more, thereby acting fraudulently.

In determining the true relation of the defendant to the note and to the other signers, the test is not whether she received the consideration on which the note is based, since that test applies only when the question is whether a married woman signed as principal or as surety for her husband, and not, as here, for which of two or more signers did she in fact become surety.

That, at the time of taking the note in suit, the plaintiff did not know that the defendant's relation to the note was other than joint maker, did not bar her from showing that she in fact signed as surety for her husband and not otherwise, and that, therefore, as against her there was no contract under G. L. 3523.

The presumption is that the defendant, in signing the note, acted within the general contractual powers conferred by statute upon married women; and the burden was upon her to show that she signed only as surety for her husband.

By signing her name on the back of the note in blank the defendant became *prima facie* liable as maker, and this irrespective of the fact that her name appears there with that of her husband.

The weight of the evidence as to whether the defendant signed the note as surety for her husband or as surety for the corporation was for the determination of the trial court, and is not revisable.

Where payments are made by judicial proceedings, the law applies them at once as it deems just and equitable, without regard to formal indorsements on the evidence of the indebtedness.

The affairs of the corporation were settled through a receivership. The plaintiff filed a claim, consisting of the note and a book account, and applied the dividend, it received *pro rata* on them. *Held*, that the plaintiff's distribution of its dividend was just and

equitable, and that the defendant was not entitled to have the dividend first applied to the payment of the note.

A discharge of one cosurety through judicial proceedings and judgment of a court of competent jurisdiction, or by operation of law, is not a discharge by the act of the creditor reducing the liabilities of the cosureties *pro tanto*, under G. L. 1827.

A creditor's appeal to county court from the disallowance of his claim by the commissioners of an estate operates to vacate their decision.

As between principal and surety, the former is primarily liable for the whole debt. As between sureties, each is liable for only his proportionate part of the debt, and the right to contribution among them is based, not on the contract of suretyship, but on an equity arising from the relation of cosureties.

The insolvency of one or more of the cosureties is regarded in actions at law for contribution, and the share to be recovered by one who has paid the whole debt is determined by the number of solvent sureties.

Since the estate of defendant's husband had no assets to be appropriated for the payment of debts, the discontinuance of plaintiff's suit on the note against his estate was harmless, and the liability of the other sureties on the note remained unaffected.

ASSUMPSIT in the common counts, with specifications on a promissory note, and a special count on said note. Plea, the general issue with notice of special matter of defence. Trial by Court at the March Term, 1918, Washington County, *Waterman*, J., presiding. Judgment for the plaintiff against both defendants. The defendant Ryle excepted.

*Theriault & Hunt* for defendant Ryle.

*Edward H. Deavitt* for the plaintiff.

STATEMENT BY CHIEF JUSTICE WATSON. The promissory note in suit is dated at Montpelier, October 10, 1911, for $1,846.92, payable to the order of the plaintiff three months after date, at First National Bank, with interest at six per cent., and signed (on its face) by Ryle-McCormick Co., by Dennis F. Ryle, Treasurer. On its back, the note is signed in blank by Dennis F. Ryle, Jennie L. Ryle, and Joseph G. Brown. On January 20, 1912, interest was paid on the note to and including

that date. On December 27, 1912, there was indorsed on the note, as received thereon, $923.46, and on May 11, 1915, $415.55.

A corporation, called the Ryle-McCormick Company, was formed and organized for doing business at Montpelier, in 1905. Both of the defendants were directors in that company from its organization. The defendant, Jennie L. Ryle, then the wife of Dennis F. Ryle, was one of the signers of the articles of association of the company, filed in the office of the Secretary of State, and attended the meeting at which the company was organized, and after the organization was annually elected a director of the company down to the time of the giving of the note in suit, and by her signature attested the correctness of the records of the corporation showing the meetings of stockholders and directors; and she participated in some of the meetings, but to what extent did not appear. Upon the organization of the corporation the two hundred and fifty shares of capital stock then issued were divided equally betwen the Brown and Ryle families with which the two defendants were connected, and the Ryle stock, by agreement between Dennis F. Ryle and his wife, Jennie L., was apportioned one hundred and twenty shares to him, and five shares to her.

After the organization of the corporation Dennis F. Ryle acted as the manager of the business of the corporation until his decease, February 14, 1912, defendant Brown, during the same time, acting in an advisory capacity. After the death of her husband, Mrs. Ryle was appointed treasurer, and for a time acted as such.

The estate of Dennis F. Ryle was settled in due form of law, but there were no assets for the payment of debts.

The affairs of the Ryle-McCormick Company were settled through a receivership in the court of chancery, in which the plaintiff proved its claim, consisting of the note in suit and a book account balance of $1,156.25, accruing in the months of September, October, and November, 1911, the whole of the amount, except an item of September 1, for $166.05, less a credit thereon of $5.72, accruing after the conference mentioned below, between representatives of the two companies.

From its organization the Ryle-McCormick Company had purchased its rough granite stock from time to time of the plaintiff company, for use in its business. In the course of carrying on its business the former company paid the plaintiff company

cash, and also gave its promissory notes which were, from time to time, paid, or renewed, or other notes given for those coming due. Some time prior to September 10, 1911, the plaintiff company held notes and account of the Ryle-McCormick Company, amounting to upwards of $7,000, the amount of the indebtedness having been gradually increasing. About that time a conference was held between the two companies, the plaintiff company being represented by its president Frank M. Corry, and its treasurer Edward H. Deavitt, and the Ryle-McCormick Company by two of its directors, Dennis F. Ryle and Joseph G. Brown. Corry requested that the latter company should either furnish security for its indebtedness, or signers on the notes of that company to his company. After that time when notes were given by the Ryle-McCormick Company to the plaintiff company, they bore the signature of Dennis F. Ryle and defendant Jennie L. Ryle and Joseph G. Brown. Two such notes were delivered to the latter company, dated September 10, 1911; and thereafter the Ryle-McCormick Company continued to purchase granite from the plaintiff company and the note in suit was given, signed by Dennis F. Ryle as treasurer in behalf of the company, and with the names of Dennis F. Ryle, Jennie L. Ryle, and Joseph G. Brown, written on the back thereof. This note was executed and delivered to take up two other notes of the Ryle-McCormick Company coming due October 10, 1911, one of them amounting to $388.26, given for stock sold in June and· July, 1911, and the other amounting to $1,458.66, given in part renewal of a previous note. These two prior notes were not signed by the directors individually, and were given by the Ryle-McCormick Company for rough granite stock sold and delivered to that company by the plaintiff company. The note in suit bore the signatures on its back, as stated above, at the time of its delivery to the plaintiff company.

Defendant Ryle never received directly anything of benefit or value for placing her name on this note, except such as she may have received as a stockholder and director. She never received any dividend on her stock, and upon the winding up of the company's affairs in the receivership nothing remained for distribution to stockholders. Dennis F. Ryle used his salary which he drew as manager, to pay the expenses of the support of his family.

In the course of the receivership proceedings, two dividends

were declared therein, one of fifty per cent., and one of twenty-two and one-half per cent.   The plaintiff received on its claim, made up of the note and the book account as stated above $2,200.95, of which $1,501.59 was received as the first dividend December 27, 1912, and $699.36 was received as the second dividend May 11, 1915.   Of the first dividend, the plaintiff applied $923.46 on the note, and the rest on the book account.   Of the second dividend the plaintiff applied $415.55 on the note, and the rest on the book account.   No question was made at the trial below as to the correctness of computations, but defendant Ryle disputed the correctness of the application, claiming that the dividends should have been first applied on the note as the indebtedness first accruing.

At the time Mrs. Ryle placed her name on the back of the note in question, it was brought to her by her husband and conversation took place between them with reference to her signing it.   Subject to exception on the ground of incompetency, the husband being dead, she was permitted to testify what that conversation was.   Their daughter, who was present, also testified to the conversation.   On the testimony thus given, the court found that Mrs. Ryle was asked by her husband to sign the note; that she asked him why he wanted her to sign it; that he answered, because they owned the house jointly; that the Wetmore & Morse Company were pressing him for money, and he would like to have her sign it with him, and she signed it.

As a part of the findings, the trial court states as follows: "In consideration of the testimony in the case, and the circumstances, we fail to find that the defendant Ryle signed her name on the note as surety for her husband, but do find that she and defendant Brown signed the same as sureties for the company, and are liable as makers so far as the plaintiff is concerned."

Judgment was rendered for the plaintiff to recover $820.17.

WATSON, C. J.   The promissory note on which this action is based, was made and delivered prior to June 1, 1913, and is therefore not affected by the provisions of the Negotiable Instrument statute.   G. L. 3059.

Defendant Ryle testified in defence that she signed the note in suit as surety for her husband, and not otherwise.   In rebuttal exception was taken to the admission of evidence showing

the consideration of this note to have been the taking up of two former notes, it being claimed that she was entitled to see those two notes, which it appeared were not in plaintiff's possession, nor their whereabouts known to it. There was no error in the ruling. The evidence had a bearing on the question of her relation to the note in question, and on the capacity in which she signed it. The two notes mentioned were collateral to the question at issue, and it was not necessary to produce them. *Rutland & B. R. R. Co.* v. *Thrall,* 35 Vt. 536; *Street* v. *Nelson,* 67 Ala. 504; *New Jersey Zinc & Iron Co.* v. *Lehigh Zinc, etc. Co.,* 59 N. J. Law 189, 35 Atl. 915.

Plaintiff was permitted to show by parol, subject to exception as not the best evidence, that those two prior notes were signed by the Ryle-McCormick Company, and neither of them had other signers. This went to the extent of showing that such notes were made, as distinct from their terms or provisions. In these circumstances the best evidence rule has no application. Parol evidence is admissible. *Holyoke* v. *Hadley Water Power Co.,* 174 Mass, 424, 54 N. E. 889.

Exceptions 1 to 8, inclusive, to certain findings of fact, as immaterial and irrelevant, are of no moment in the disposition of the case; for the rights under such exceptions are fully protected by exception to the judgment which must necessarily be based on the material and relevant facts, only.

Exception was taken to the finding that defendant Ryle never received directly anything of benefit or value for placing her name on the note in suit, except such as she may have received as a stockholder and director. It is argued that this implies that she may have received some benefit or value indirectly as a stockholder and director, although it is found that she never received any dividend on her stock and received nothing on the winding up of the company's affairs. With the two facts last stated expressly found, it is not clear how there can be an implied finding conflicting therewith. It is further argued that as to whether the directors, as such, received anything from the company, there was no evidence. If the directors received anything, the presumption is that it was only by way of compensation for services rendered. There is no presumption that they received more, thereby acting fraudulently. Whether they did or did not receive compensation for their official services is of no importance.

The question whether Mrs. Ryle received any consideration for signing the note in suit, is quite another thing, and was material in determining her true relation to the note and to the other signers. *First Nat. Bank* v. *Bertoli,* 87 Vt. 297, 89 Atl. 359, S. C. 88 Vt. 421, 92 Atl. 970. Relying on the authority of the case here cited, it is urged that the test of her relation to the transaction is, whether she received in person or in benefit to her estate, the consideration on which the note is based. This is so only when the question is: Which of the two relations does she bear, that of principal, or that of surety? It can be no test when, as here, the question is: For which of two or more other signers on the note or other obligation did she in fact become surety? In such a case there is no difference in the nature of the engagement. It is to answer to the debt or default of another. This was a fact to be determined by the trial court on the evidence. Thereon the record states that in consideration of the testimony in the case, and the circumstances, the court fails to find that defendant Ryle signed her name on the note as surety for her husband, but does find that she and defendant Brown signed it as sureties for the company, and are liable as makers so far as the plaintiff is concerned.

It is urged by the plaintiff that it had no knowledge or information, at the time of taking the note in suit, that Mrs. Ryle's relation to the note was different from that of its purport on the note itself, and so, as to the plaintiff, she became liable as a joint maker with the Ryle-McCormick Company. This claim entirely excludes the law permitting her, the plaintiff's freedom from such knowledge or information notwithstanding, to show that in fact she signed as surety for her husband and not otherwise, and therefore as against her there is no contract. G. L. 3523; *Bradley Fertilizer Co.* v. *Caswell,* 65 Vt. 231, 26 Atl. 956.

As the case is presented, the crucial question is, whether there was evidence on which the finding that she signed as surety for the company, could properly be made. If she signed as surety for the Ryle-McCormick Company, her undertaking was a lawful one which she was competent to enter into. If she signed as surety for her husband only, her undertaking was without her power and absolutely void. In these circumstances the presumption is that she acted within the general contractual powers conferred by statute upon married women; and since she claimed that her obligation was only as surety for her husband, and so

within the exception to the general powers thus granted, the burden was with her to show it.   This is the general rule of construction when a party claims to be within the exception to a statute, rather than within its general provisions; and it was in effect so considered in connection with the statute granting such general powers to married women, in *Seaver* v. *Lang,* 92 Vt. 501, 104 Atl. 877.   The rule seems to be the same in other jurisdictions when applied to similar statutes enabling married women to contract generally, but containing a clause excepting some particular class of undertakings.   *Reeves* v. *Morgan,* 48 N. J. Eq. 415, 21 Atl. 1040; *Pulliam* v. *Hicks,* 132 Ala. 134, 31 South. 456; *Lunsford* v. *Harrison,* 131 Ala. 263, 31 South. 24; *Bley* v. *Lewis,* 188 Ala. 535, 66 South. 454; *Guy* v. *Liberenz,* 160 Ind. 524, 65 N. E. 186; *Miller* v. *Shields,* 124 Ind. 166, 24 N. E. 670, 8 L. R. A. 406; *Christensen* v. *Wells,* 52 S. C. 497, 30 S. E. 611; *Miller* v. *Hilton,* 189 Mich. 635, 155 N. W. 574; *Bank* v. *Poore,* 231 Pa. 362, 80 Atl. 525; *Farmers' and Merchants' Bank* v. *Donnelly,* 247 Pa. 518, 93 Atl. 761.

By signing her name on the back of the note in blank, Mrs. Ryle became *prima facie* liable as maker, *Bank* v. *Dorset Marble Co.,* 61 Vt. 106, 17 Atl. 42, 2 L. R. A. 428; *Ballard* v. *Burton,* 64 Vt. 387, 24 Atl. 769, 16 L. R. A. 664.   And though her name appears there with that of her husband the presumption is the same.   *Longnecker* v. *Bondurant,* 173 Ky. 427, 191 S. W. 286; *Pulliam* v. *Hicks,* cited above.

It is unnecessary to refer specifically to the evidence in detail.   We have examined it all very carefully on the question of this finding, and are satisfied, in view of the presumptions mentioned above, that the finding was warranted.   The fact that there was, perhaps, what seems to be strong evidence the other way, does not avail.   The weight was for the determination of the trial court, and is not revisable.

The dividends received by the plaintiff through the receivership proceedings constituted involuntary payments.   They were by the plaintiff in fact applied *pro rata* upon the note and the book account which made up its claim filed in the receivership cause.   No question is made concerning the correctness of computations in making the applications, but it is contended that the dividends should have been first applied on the note as the indebtedness first accruing.   This is not a case where the debtor or the creditor had the right to make the applications.   It is a

case where the payments were by judicial proceedings, and the applications were made by law at once (without regard to formal indorsements on the note or entry of credit on the account. *Ballantine & Sons* v. *Fenn,* 88 Vt. 166, 92 Atl. 3; *Patch & Co.* v. *First Nat. Bank,* 90 Vt. 4, 96 Atl. 423), as , in the circumstances, was just and reasonable. *Blackstone Bank* v. *Hill,* 10 Pick. [Mass.] 128; *Commercial Bank* v. *Cunningham,* 24 Pick. [Mass.] 270, 35 Am. Dec. 322; *Orleans County Nat. Bank* v. *Moore,* 112 N. Y. 543, 20 N. E. 357, 8 Am. St. Rep. 775, 3 L. R. A. 302; *Armstrong* v. *McLean,* 153 N. Y. 490, 47 N. E. 912. The rule is not different in this State where the parties have the right to make the application but neither does it,—the law makes it as it deems just and equitable. *Pierce, Clark & Co.* v. *Knight,* 31 Vt. 701; *Pawlet* v. *Kelley,* 69 Vt. 398, 38 Atl. 92.

The claim filed in the receivership cause was made up of the note and of a copy of the book account showing the items of which it was composed. The dividends were paid on the two. In the book account, other than the principal debtor, only the creditor was interested. In the note, others were interested as promisors. We see no good reason why the interests of either should be consulted to the exclusion and detriment of the interests of the other. A just and equitable application is one that is so between the parties. A *pro rata* distribution gives to each part of the claim according as it was the basis of the dividends. To place more than such proportionate share on the note would be to give it the benefit of dividends beyond which it was the basis, thereby working an injustice to the creditor in respect of his book account. There was no error in the applications made. This is according to the holdings in the Massachusetts and New York cases, cited above.

Defendant Ryle was appointed administratrix upon the estate of her husband, and settled her final account on January 10, 1917. The note in question was presented by the plaintiff to the commissioners on the estate for examination and allowance; but it was disallowed by them, their report was accepted and ordered to be recorded by the probate court having jurisdiction of the matter, September 18, 1912. From this judgment the plaintiff brought its appeal to the county court, where it remained until the March Term, 1917, when the cause was discontinued. This discontinuance was after the settlement of the final account of the administratrix in the probate court, wherein

it was determined that there were no assets of the estate available as a dividend to the creditors. It is urged that, whether Mrs. Ryle stands as a maker or as a surety for the Ryle-McCormick Company, the judgment of the probate court discharging her joint obligor, her late husband, had the effect of reducing her liability and the liability of defendant Brown *pro tanto.* In support of this position reliance is placed upon G. L. 1827, also upon the case of *Alford* v. *Baxter,* 36 Vt. 158, construing that statute. By the statute a creditor having a debt or demand against a partnership, or several joint obligors or promisors, may discharge one or more of such partners, obligors or promisors, without impairing his right against the others to the residue of his debt or demand. It is to be observed that this statutory provision is limited to acts of discharge by the creditor. And the case cited is one where the creditor had, in writing, discharged one of the several sureties on the note there in question. The holding was that the statute applied to joint sureties as among themselves, as well as to joint principals. A discharge through judicial proceedings and judgment of a court of competent jurisdiction, or by operation of law, is not a discharge by the act of the creditor. The present case shows that the creditor undertook to enforce his note against the estate of the deceased surety in due course of judicial procedure. By the decision and report of the commissioners the claim was disallowed. The creditor's appeal to the county court operated to vacate the decision of the commissioners. *Allen* v. *Rice,* 22 Vt. 333; *Stearns* v. *Stearns's Estate,* 30 Vt. 213; *Thorp* v. *Thorp's Estate,* 75 Vt. 34, 52 Atl. 1051. The cause was discontinued only after it was ascertained by the determination of the probate court that the estate had no assets to be appropriated for the payment of debts. Further prosecution of the appeal was useless, and its discontinuance was in no wise a discharge, by the creditor, of one of the joint obligors or promisors within the contemplation of the statute relied upon. By reason of the discontinuance the claim became barred as against the estate by operation of law. In the absence of any finding to the contrary, the plaintiff is presumed to have acted in good faith. No claim is made to the contrary. Mrs. Ryle, being administratrix, had knowledge of the steps taken by the plaintiff to establish its claim against the estate. The claim being disallowed by the commissioners, it is fair to assume that her attitude was in opposition to its allow-

ance.   In *McCollum* v. *Hinckley,* 9 Vt. 143, a case in equity, the creditor neglected to present his claim, a promissory note with surety, to the commissioners on the estate of the principal debtor, by reason of which the claim became barred, as against the estate.   The court said sound policy would require that the surety be released from the obligation, to the amount which might have been realized out of the estate of the principal, and where there is *actual fraud,* that at law he should be wholly released.

As between the principal and the sureties, the former is primarily liable for the whole debt.   As between sureties, each is liable for only his proportionate part, and the right to contribution among them is based, not on the contract of suretyship, but on an equity arising from the relation of cosureties.   *Aldrich* v. *Aldrich,* 56 Vt. 324, 48 Am. Rep. 791.   And by the law of this State the insolvency of one or more of the cosureties is regarded in actions at law for contribution, and the share to be recovered by one who has paid the whole debt is determined by the number of solvent sureties.   *Liddell* v. *Wiswell,* 59 Vt. 365, 8 Atl. 680. Reasoning from analogy, we think the most the other sureties can claim in the circumstances, if anything (which we do not decide), in consequence of plaintiff's discontinuing its appeal, whereby its debt became barred as against the estate, is that they be released from their obligation to the amount which might have been realized out of the estate by way of contribution.   It being determined by the probate court that the estate had no assets to be appropriated for the payment of debts, nothing could have been realized therefrom on the claim, even though that action had been prosecuted to a final judgment in favor of the plaintiff; consequently the liability of the other sureties on the note remains unaffected.   See *Howard Nat. Bank* v. *Arbuckle,* 92 Vt. 84, 102 Atl. 476.

Whether the plaintiff was in duty bound, in the first instance, to exhibit its note for examination and allowance by the commissioners on the deceased surety's estate, for the protection of the other sureties, is a question not in the case.

*Judgment affirmed.*