JOHN SPRAGUE v. ROYAL ABBOTT, JR.

*State School Tax, Assessment of, on what List. Legalization of List. Presumption.* R. L. ss. 351–657; Acts of 1882, No. 1, s. 35.

1. The statute provided that the selectmen should annually assess a state school tax previous to the first day of January, but did not specify the list on which it was to be assessed; *Held*, on general principles of law, that it should be assessed on the list last completed and in force at the time of the assessment; in this case, the quadrennial list completed and legalized by the legislature November 18, 1882.
2. It is presumed that the assessment was after the legalization of the list, as the exceptions do not show that it was before.

TRESPASS and case. Plea, general issue and justification under certain rate bills and warrants. Trial by court, December Term, 1884, Orange County, ROWELL, J., presiding. Judgment for the plaintiff.

*W. P. Dillingham* and *N. L. Boyden*, for the defendant.

The tax in question was a state school tax. The money collected does not belong to the town, and cannot be recovered of the town. The town collected it as an agent. *Vermont Central R. R. Co.* v. *Burlington,* 28 Vt. 200; *Spear* v. *Braintree,* 24 Vt. 419; *Wilson* v. *Seavey,* 38 Vt. 221.

The tax was legally assessed on the fall list of 1882. This position is fully sustained by ROYCE, Ch. J., in *Clove Spring Iron Works* v. *Cone,* 56 Vt. 603.

The state school tax is provided by general law, R. L. s. 656, and is not voted by the town. The Act of 1882, No. 1, provides for assessing state and county taxes on the list next previous to laying the tax.

*Heath & Willard* and *S. B. Hebard,* for the plaintiff.

The tax was not a state but a town tax. It should have been assessed on the May list. R. L. ss. 338, 354, 657.

The legislature uses the term " state taxes," in the sense of taxes paid into the state treasury. All provisions of law relating to the special fall list and all statutes directing any taxes to be assessed on such list were repealed by No. 1 of the Acts of 1882; hence, the assessment was illegal, because there was no law prescribing that state or any other taxes should be assessed on such list.

The opinion of the court was delivered by

WALKER, J. The defendant, as collector of taxes for the town of Brookfield, received from the selectmen of said town four rate bills of taxes for the year 1882, to wit; town, state, county, and state school rate bills, each containing a tax against the plaintiff, with warrants attached thereto for collection. The plaintiff having neglected and refused to pay the said several taxes, the defendant levied upon and sold two shares of stock of Randolph National Bank, belonging to the plaintiff, to satisfy said taxes in accordance with the provisions of law; and this suit is brought to recover the value of the stock. The defendant's defence is justification under said rate bills and warrants.

No question is made as to the proceedings of the officer under the several warrants, if the taxes were properly assessed. So, if the taxes were properly assessed, the defendant's justification is made out.

There were two grand lists for the year 1882; one, made up of the appraisal of personal property and polls taken in the spring, and the appraisal of real estate made in the spring of 1881, called the spring, or annual list; the other, made up of the spring appraisal of personal property and polls, and the quadrennial appraisal, of real estate for that year, called the quadrennial or fall list. The latter was required to be completed by October 1, 1882; but in the

town of Brookfield this fall list was not completed until a later date, and was afterwards legalized by an act of the legislature, approved November 18, 1882, and then it became a complete and legal list.

Of the taxes thus received by the defendant for collection the town tax was assessed upon the spring or annual list of Brookfield for the year 1882, and the state, county, and state school taxes upon the quadrennial or fall list of 1882.

The legality and assessment of the town, state, and county taxes are not questioned. But it is objected that the so-called state school tax was assessed upon the wrong list, and claimed that it should have been assessed upon the spring or annual list and not upon the quadrennial list.

The state school tax, as it is usually called, is a tax required by the statute to be assessed upon the grand list annually by the selectmen of the town previous to the first day of January, and to be collected and paid into the treasury of the town before the first day of the succeeding March, and during the month of March to be divided among the school districts of the town. R. L. ss. 657, 661. The town treasurer does not receive the money so collected as money belonging to and subject to.the control of the town. The officers of the town are made by law agents to assess and collect the tax and distribute the money to the school districts. Neither the town nor school districts have any voice or vote in the appropriation nor any control over the same by their respective votes. It is a tax imposed by authority of a general law of the State, and required to be assessed and paid over annually to the school districts, and on failure to comply with the law a penalty of double the amount of the tax is imposed upon the town.

Act No. 1 of the Acts of 1882 amended sec. 351 of the Revised Laws, specifying upon what grand lists taxes should be assessed, so that it reads as follows, viz.: "Town, village, school and fire district, and highway taxes voted, on or after the first day of March in any year and before the

first day of March following, shall be assessed on the list returned to the town clerk's office in May. The highway tax required to be assessed by sec. 3044 shall be assessed upon the list returned to the clerk's office in May of the year in which such tax is assessed." Sec. 351 R. L.; s. 35 of No. 1 of the Acts of 1882.

By this Act of 1882 state and county taxes were to be apportioned among the towns and cities according to their population, and a warrant for the amount apportioned to each town transmitted to the selectmen, and when received the officers of the town were to determine the per cent of tax necessary to raise the sum called for and assess the same on the grand list completed next previous to the passage of the act, and cause the same to be collected and paid into the proper treasury, or draw an order on the town treasury for the amount, or borrow the amount on the credit of the town.

The Act of 1882 repealed all of the sections of the Revised Laws specifying upon what lists taxes should be assessed in organized towns, except sec. 351, which was amended so as to read as hereinbefore stated. It made provision for the assessment of all taxes *voted* by towns, school districts, etc., and for the assessment of the highway tax required to be assessed by sec. 3044, and for the assessment of state and county taxes apportioned *per capita* to the towns, particularly specifying upon what list the same must be assessed, but made no provision as to what list the state school tax shall be assessed upon. The only law relating to the assessment of the state school tax in force at the time of the assessment of the tax in question was sec. 657 requiring that it shall be assessed upon the grand list without specifying upon what list.

The quadrennial list of Brookfield for the year 1882 was completed and legalized November 18, 1882, and was in force from that date as a legal list of the town, upon which all taxes were to be assessed that were not re-

quired by law to be assessed upon an earlier list. The selectmen assessed the tax upon this quadrennial list; and as the exceptions do not show that the tax was assessed before the completion and legalization of the same, the presumption is that it was assessed after the list was completed and in force.

The court will not presume error where none is shown to exist; and no error was claimed as to the time of the assessment. The counsel upon both sides argued the case upon the assumption that the tax was assessed after November 28, and before December 21, 1882, and within the period required by law for the assessment of this tax.

This assessment, then, was made upon the list last completed and in force at the time of the assessment, and we think rightfully and in accordance with the provisions of law. This tax was *not voted* by the town and was not designated in sec. 351 R. L. as a tax required to be assessed upon the spring or annual list, and its assessment must therefore follow and be governed by general principles of law.

It is well settled that taxes voted by any municipal body must be voted and assessed upon the grand list last completed and in force at the time of the voting or laying of the tax unless otherwise provided by law.

And we think the same principle applies to the assessment of a tax required to be assessed under a general law of the State; that is, in the absence of any statute directing upon what list the same shall be assessed, it must be assessed upon the grand list last completed and in force at the time of the assessment, if made within the period limited by law; and no question is made but that the assessment of the tax in question was made within the time required by the law.

There was no other list then in force upon which the tax could have been legally assessed.

The appraisal of real estate in the spring of 1881 was sub-

stituted for the quadrennial appraisal of 1878, and was to continue in force in lieu thereof only until the next quadrennial appraisal. So necessarily the completion of the quadrennial list rendered the spring list of 1882 invalid for the assessment of any tax except such taxes as were particularly designated and required by law to be assessed upon it.

Therefore, as the state school tax is not, by the statute, required to be assessed upon the spring list, it follows that the quadrennial list was the only list in force upon which the assessment could have been legally made, at the time it was made. As this holding is decisive against the plaintiff it is not necessary to consider the other question raised in the case.

The judgment of the County Court is reversed, and judgment rendered for the defendant.