MARK J. FISK v. LAURA A. MILLS.

*Married women—Bills and notes—Consideration.*

1. Where, in a suit against one of the makers of a promissory note, it appears that the defendant is a married woman, the burden is upon the plaintiff to show that the consideration for the note passed to her.

2. In a suit upon a promissory note signed by husband and wife, it appeared that a portion of the consideration for the note ·was money paid to the husband by the payee by request, as the payee claimed, of the wife. The testimony failed to show that the wife stated to the payee at the time he advanced the money to her husband that it was for · the benefit of her separate estate, and it cônclusively appeared from the evidence that it was not. And it is held that a judgment against the wife for the amount of the note cannot be sustained.[1]

Error to Ionia. (Dodds, J., presiding.) Submitted on briefs February 15, 1895. Decided March 19, 1895.

*Assumpsit.* Defendant brings error.. Reversed. The facts are stated in the opinion.

*R. A. Hawley,* for appellant.

*George E. & M. A. Nichols,* for plaintiff.

---

[1] As to liability of married women upon their promissory notes, see *O'Donnell v. Bray,* 99 Mich. 534, and note.

104  433
116  386

104  433
d119  702

104    433
s62ⁿʷ 559,
f131  ²295

MONTGOMERY, J. This is a suit upon a promissory note for $210.90, executed by defendant and her husband to Dr. David Kelley, and by him assigned to plaintiff. The plaintiff, assignee of Dr. Kelley, recovered judgment for the amount of the note.

The fact appearing that defendant was a married woman, the burden rested upon the plaintiff of showing that the consideration of the note passed to her. *Fechheimer v. Peirce*, 70 Mich. 440. The consideration of the note consisted, in part, of a debt claimed to be owing from defendant, Mrs. Mills, for merchandise furnished upon her sole credit. There was evidence from which the jury might have found that this merchandise was purchased upon her agreement to pay for it, and that the credit was extended solely to her. The further consideration for the note was money paid to the husband of defendant, Mr. Mills, amounting to $103. The charge of the court left the jury to find whether this money was in fact advanced for the benefit of Mrs. Mills, and at the close of the charge plaintiff's counsel made a suggestion, as follows:

"If Dr. Kelley understood that the money was for her use and benefit, money that he let her have, and at the time that he let her have the money she so understood it, why, she would be bound.

"*The Court:* Yes, if she told him that it was for her benefit at the time she got it, and Dr. Kelley so understood it, then it is binding upon her."

The only testimony offered for the purpose of showing this understanding was that of Dr. Kelley himself. He testified, on direct examination, as follows:

"Mrs. Mills told me to let Mr. Mills have the money, and I let him have it on that order, as I have other things. I let him have it on that order from her.

"Q. Did she tell you what was going to be done with this money?

"A. It was in payment of making a well, or fixing the

well, I understood, at the house where she lived. She said let him have it to cancel a debt for that well where she lived. I let her have either $15 or $25, I am not able to say which. I gave it to her direct to make up the $210. There was nothing said at the time between Mrs. Mills and me that this $15 or $25 was for her husband. It wasn't for her husband. I gave it to her individually."

On cross-examination he testified as follows:

"*Q*. I understand that $90 of this money you paid to Mills?"

"*A*. By her order.

"*Q*. I didn't ask you about that. You paid it to Mr. Mills?

"*A*. I handed it to Mr. Mills.

"*Q*. You knew at the time you paid it to him, didn't you, that he was going to pay for a well upon his farm?

"*A*. I understood that so, but I understood since it wasn't.

"*Q*. That was your understanding at that time?

"*A*. There was some talk that he was. I didn't know he was, and I don't know now he was.   *   *   *

"*Q*. At the time you let him have this money, didn't you let him have $103?

"*A*. It may be.

"*Q*. And wasn't Albert Hopkins present, and didn't Mills tell you that he was coming here to Ionia to pay for the well?

"*A*. To pay John Blanchard.

"*Q*. And didn't you tell him he had better get right down that day?

"*A*. I might have said that. I think I did.   *   *   *

"*Q*. This well that you have mentioned is upon Mr. Mills' premises, upon his place?

"*A*. I don't know whether it is Mr. Mills' place or not; never saw no deed of it.

"*Q*. It is called Mr. Mills' place, isn't it?

"*A*. I think he called it like that.

"*Q*. He called it so at the time, didn't he?

"*A*. I guess he did. I am not positive.

"*Q*. You knew that this $90 or $103, whatever it was, was going to pay for a well on this place?

"*A*. I didn't know it certain. I don't recollect whether he said that or not. He told me to let him have that amount of money that I did let him have, for to go to

Ionia to pay Mr. Blanchard. She told me she wanted the money. I told her I could let her have it, if she would give me a mortgage on the place. There was no talk of any mortgage on his place. She said she did not like to put a mortgage on her place, but she did not say she would not."

This is substantially all the testimony which bears upon the question. The record is barren of any testimony which shows that Mrs. Mills ever stated to Dr. Kelley that this money which he advanced to Mr. Mills was for the benefit of her separate estate; and the evidence shows conclusively, as a matter of fact, that it was not. The case is governed by the previous rulings of this Court in *Fechheimer v. Peirce, supra; Schmidt v. Spencer,* 87 Mich. 121; *Chamberlain v. Murrin,* 92 Id. 361.

Judgment should be reversed, and a new trial ordered.

The other Justices concurred.