FEATHER *v.* FEATHER'S ESTATE.

1. MARRIED WOMEN—POWER TO CONTRACT—PROMISSORY NOTES.
    A married woman may bind herself by contracts relating to her separate property, and may borrow money upon her own account; but she cannot bind herself by a note given as surety for her husband, or to secure the payment of money nominally received by her, yet in fact received for the use of her husband.

2. SAME—CLAIM AGAINST ESTATE OF DECEDENT—EVIDENCE.
    Claimant presented for allowance a claim against the estate of his deceased wife for moneys paid in discharge of a note executed by himself and wife, which he claimed to have signed as surety merely. Upon appeal from an order disallowing the claim, claimant's daughter testified that she

went, under her mother's directions, to the person who was to loan the money in consideration of which the note was given, obtained it, and took it to her mother; that her mother prepared a note, which both of her parents signed, and that she delivered the same to the lender. It appeared that the wife owned the farm upon which she and her husband lived, and there was testimony tending to show that she conducted the same in her own interest. The testimony of the daughter was disputed by the lender, who testified that she loaned the money to claimant; but other testimony tended to impeach that of the lender. *Held,* that there was evidence to go to the jury in support of the claim.

3. SAME.

The testimony of laborers who had worked upon a farm owned by a married woman, and occupied by herself and husband, that their wages were paid by the wife, is competent in support of the contention that the farm was conducted in the interest of the wife.

Error to Washtenaw; Kinne, J. Submitted January 28, 1898. Decided March 22, 1898.

Joseph Feather presented a claim against the estate of Caroline Feather, deceased. The claim was disallowed in the probate court, and claimant appealed to the circuit. From a judgment for claimant, defendant brings error. Affirmed.

*Frank E. Jones (Seth C. Randall,* of counsel), for appellant.

*M. J. Lehman* and *Arthur Brown,* for appellee.

MONTGOMERY, J. Claimant presented for allowance a claim against the estate of his deceased wife. The claim was for money paid in discharge of a note executed by deceased and claimant. Claimant asserts that he was a mere surety, and that the obligation was the obligation of deceased. It appears by the testimony that Mrs. Feather was the owner of a farm consisting of 72 acres of land, upon which the parties lived; that, some time before her death, a note was given to a sister of the deceased, Mrs.

116 MICH.—25.

Brainard, for $1,200, borrowed money. The question for determination by the jury was whether this money was borrowed by deceased for her own use.

The main questions of law discussed in the briefs of counsel are not novel, but, on the contrary, have been well settled. This court has uniformly held that a married woman may bind herself by contracts relating to her separate property, and it is, of course, equally clear that she may borrow money if she borrows it on her own account. On the other hand, a wife cannot bind herself by a note given as surety for her husband, nor to secure the payment of money nominally received by her, yet in fact received to the use of the husband. *Fechheimer* v. *Peirce*, 70 Mich. 440; *Schmidt* v. *Spencer*, 87 Mich. 121; *Fisk* v. *Mills*, 104 Mich. 433. The difficulty in the present case is in the application of these rules to the facts of the case. The claimant gives testimony tending to show that deceased, during all the time that the parties lived together on the farm, kept the account of the financial matters on the farm, kept the money which came from carrying on the business, paid the help, and paid some other bills. The testimony, however, shows that claimant during this time had charge of the work on the farm, and directed the work of the men employed. The only direct testimony tending to charge deceased for the money in question is that given by Lizzie Feather, a daughter of claimant, who lived in the family during this time, and who testified that, when the $1,200 was procured, deceased directed the witness to go to Mrs. Brainard, and get the money; that she did so, and took it home, and gave it to her mother (deceased); that her mother prepared a note for the amount; that both she and claimant signed it, and that it was taken by witness, and delivered to Mrs. Brainard; that she did not know what Mrs. Feather wanted to do with this $1,200. This witness also testified that her father had charge of the work on the farm, through the direction of deceased, and that, whenever anything was sold on the farm, the money was given

to deceased. This testimony on the part of the claimant was disputed by Mrs. Brainard, who testified that the loan of $1,200 was made to Mr. Feather; but there is testimony tending to impeach her statements, the probate judge having been called to testify that she testified in the probate court that she had loaned the money to Mrs. Feather, and that the note was given by both Mr. and Mrs. Feather.

Defendant's counsel objected to the testimony of numerous witnesses who were called to testify that they had performed work upon the farm in question, and that their wages were paid by Mrs. Feather. We think this testimony was admissible, as bearing upon the question of whether the farm was being conducted in the interests of Mrs. Feather or of claimant. The circuit judge charged upon this question that the mere fact that Mrs. Feather herself paid the men employed upon the farm did not in itself establish the claim made, but that it was one of the circumstances to be considered by the jury.

It is also claimed that there is no evidence whatever tending to show that deceased borrowed this money on her own account. We are not prepared to say that there was a total lack of evidence on this subject. The testimony of Lizzie Feather referred to tends to show that deceased was the principal in the transaction. It is true, this testimony was disputed; and, had the testimony of Mrs. Brainard stood unimpeached and uncontradicted, we should hesitate before holding that there was evidence for the jury. But such is not the case, and the case is to be treated as though the testimony of Mrs. Brainard were out of it; and we are not prepared, in view of this, to hold that the testimony of Lizzie Feather had no tendency to establish the facts claimed.

No other questions arise in the case of interest to the profession. An examination of the record convinces us that no prejudicial error was committed, and the judgment will be affirmed.

The other Justices concurred.