FIRST NATIONAL BANK OF MONTPELIER ·*v.* MARIA ·BERTOLI.

November Term, 1913.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed January 13, 1914.

*Bills and Notes—Delivery—Contracts of Married Women—De-*
*fences—Surety for Husband—Renewals—P. S. 3037-3051—*
*Effect—Review—Reference     to     Transcript—Effect—Evi-*
*dence—Defective Offer—Declarations—Principal and Agent*
*—Proof of Agency—Declaration of Agent.*

Before the enactment of No. 140, Acts 1884, all contracts of a married
    woman were absolutely void at law, and that statute removed her
    disability only as to contracts with others than her husband with
    reference to her sole and separate property, except that she could
    become surety for her husband only by way of a duly executed
    mortgage, and left her still under the common-law disability as to
    all contracts with her husband, and contracts with others affecting
    her property not held to her separate use.

Where a bank held notes amounting to $14,500 which it had discounted
    for a husband who, on being asked to reduce ·the indebtedness,
    procured his wife to sign a note of $5,000 to the bank, after its
    cashier had told her that the note would be held only as security
    for her husband's indebtedness to the bank and that the first
    money received on his collections would be applied in payment of
    the note, and the husband had credit for the amount of the wife's
    note which was renewed from time to time until after his death,
    when she was induced to pay a large portion thereof and to give
    a new note for the balance, and proved the last renewal note as
    a claim against her husband's estate, the transaction showed that
    the wife signed the note as mere surety for her husband, and both
    it and all the renewal notes were void as a violation of P. S.
    3039, providing that a married woman may not become surety for
    her husband except by way of mortgage.

The fact that a married woman signed a note payable to a bank and
    apparently independent of her husband's indebtedness to the bank,
    will not preclude her from showing that in fact the note, to the

knowledge of the bank, was given as collateral security for her husband's indebtedness to it.

Whether a transaction between a married woman and her husband's creditor is one by which she becomes surety for her husband is to be determined, not from the form of the transaction nor from its basis, but by its real purpose and effect, the test being whether she received in person or for the benefit of her estate the consideration moving from the creditor.

Where a married woman executed a note to a bank as collateral security for her husband's debt to it, and several times renewed the note, neither did those renewals nor the fact that, after the death of her husband she took up the last renewal note by paying part of it in cash and giving her note for the balance and then proved that renewal against her husband's estate, preclude her from relying on the defence that in the whole transaction she was the mere surety for her husband.

In a suit by a bank on a note executed to it by a married woman as collateral security for the debt of her husband, his sole mortgage to the bank on their homestead, the title to which was in him, was not evidence tending to show a consideration for her note, notwithstanding the facts that the bank surrendered some of his notes secured by the mortgage in exchange for her note, and subsequently she acquired title to the mortgaged premises relieved of incumbrance to the extent of the surrendered notes.

Where there is a conflict between a bill of exceptions and the transcript referred to thereby and made a part thereof, but not made controlling, the former prevails.

On the issue as to whether the note of a married woman was given to plaintiff bank merely as collateral security for her husband's debt, defendant's offered evidence that, if the bank took the note without any investigation of the parties or the genuineness of the signature, it would appear that the note was given merely as collateral security as defendant claimed and to get rid of the complaint of the bank examiner, was properly excluded as an offer to elicit argument and not to show facts.

The statements of an agent are evidence against his principal only when made in and about the business in which the agent is employed and while actually engaged in that business.

On the issue as to whether the note of a married woman was given plaintiff bank merely as collateral security for the debt of her husband, who had since deceased, statements made by him to

another signer of the note, but not in the presence of any of the officers of the bank, by way of inducement to secure the witness's signature to the note were mere hearsay and so inadmissible.

Agency cannot be shown by the mere acts or declarations of the alleged agent.

ASSUMPSIT. Plea, the general issue. Trial by jury at the March Term, 1913, Washington County, *Fish,* J., presiding. Verdict directed for the plaintiff, and judgment thereon. The defendant excepted. The opinion states the case.

*J. W. Gordon* and *S. Hollister Jackson* for the defendant.

Whether a transaction between a married woman and her husband's creditor is one of suretyship is to be determined, not from the form of the contract nor from its basis, but by its real purpose and effect. *Field* v. *Campbell,* 164 Ind. 389; *Field* v. *Noblett,* 154 Ind. 357; *Harbaugh* v. *Tanner,* 163 Ind. 574; *Webb* v. *John Hancock Mut. Life Ins. Co.,* 162 Ind. 616; *Long* v. *Crosson,* 119 Ind. 3; *Vogel* v. *Leichner,* 102 Ind. 55; *Andrysiak* v. *Satkoski,* 159 Ind. 428; *Cutt* v. *Campbell,* 103 Ind. 213; *Third Nat. Bank* v. *Tierney,* 110 S. W. 293; *Freeman's Appeal,* 68 Conn. 533.

In order that the contract of a married woman with others than her husband shall be valid under our statutes, it must relate wholly to her separate property. *Armstrong* v. *Best,* 112 N. C. 59; *Yale* v. *Dederer,* 2 N. Y. 450; *Rowley et ux.* v. *Shepardson et ux.,* 83 Vt. 167; *Brunnell* v. *Carr,* 76 Vt. 174; *Laird* v. *Perry,* 74 Vt. 454; *Hubbard* v. *Bugbee,* 58 Vt. 172.

*Edwin M. Harvey* for the plaintiff.

TAYLOR, J. The action is general and special assumpsit to recover on a note signed by the defendant and payable to the plaintiff. There was trial by jury and verdict directed for the plaintiff for the amount of the note with interest.

The defendant was the wife of the late Harry J. Bertoli. They had lived together as husband and wife for more than twenty years prior to his death on March 22, 1911. Mr. Bertoli was a granite manufacturer in the city of Montpelier. He had done business at the plaintiff bank for more than fifteen years

prior to his death. On September 11, 1908, he had paper which the plaintiff bank had discounted and held to the amount of about $14,500. Previous to this time the United States bank examiner had had some talk with the officers of the bank in regard to the amount of Mr. Bertoli's paper held by the bank. The plaintiff's evidence tended to show that it called upon Mr. Bertoli to reduce his indebtedness and that after some talk with him he presented on September 11, 1908, a note payable to the order of the plaintiff ninety days from September 11, 1908, for five thousand dollars signed by the defendant and one G. Gentili; that the plaintiff bank took this note and surrendered to Mr. Bertoli and cancelled as paid about four thousand dollars of his notes, indorsing the balance of the five thousand dollar note upon other notes held by the bank against him; that the plaintiff bank knew at the time they received the note of the defendant and Gentili that the defendant was Harry J. Bertoli's wife; that no part of the proceeds of said note went for the benefit, directly or indirectly, of the defendant or Gentili or to them together; that it held this note for the ninety days, whereupon Mr. Bertoli presented a renewal note signed by the defendant and Gentili for ninety days and that there were five renewals of said note at intervals of ninety days by the defendant and Gentili; that the discounts were paid by Mr. Bertoli on each of such renewal notes; that the last renewal of the five thousand dollar note by both the defendant and Gentili was on November 12, 1909; that thereafter the note was renewed by the defendant signing it alone, and the bank knew that it thereby released Gentili; that the defendant's renewals extended a little beyond the date of the husband's death on March 22, 1911; that Arthur G. Eaton was cashier of the plaintiff and did all the business relating to the matters in controversy as a duly authorized agent of the plaintiff; that at the time the plaintiff took the note of the defendant and G. Gentili, both signers did not own property above mortgages to exceed three thousand dollars; that the plaintiff received no security whatever for the said five thousand dollar note. The plaintiff's evidence further tended to show that on January 16, 1902, some six years previous to the giving of the five thousand dollar note, Mr. Bertoli gave a mortgage of his homestead to the plaintiff for three hundred and five dollars "and to secure other and further indebtedness" but this mortgage was not given by Mrs. Bertoli.

The defendant's evidence tended to show that her husband had asked her to sign the five thousand dollar note in 1903 and that she refused to sign it; that thereupon Mr. Eaton representing the plaintiff, came to her and urged her to sign the note on the ground that it would be taken and held only as security for her husband's indebtedness to the plaintiff; that her husband, Mr. Bertoli, had a great deal of money coming due and more than enough to cover the five thousand dollar note and that the first money received on his collection would be applied in payment of this note; that her signing the note would help the bank with the examiner; that on this understanding she finally consented to sign the note and renewed the same from time to time during the lifetime of the said Mr. Bertoli; that after his death on March 22, 1911, Mr. Eaton, representing the bank, came to the defendant and asked her to pay the note out of five thousand dollars of insurance money that she had received on the life of her husband; that she objected to the payment of the note and told Mr. Eaton that it belonged to the estate to pay it; that he told her that he would take her home and just leave her $500 for a homestead; that she afterwards saw her attorney and that he told her she would have to pay it; that she then went to the bank on April 24, 1911, and paid on the note $3,468.76 and gave a note which is the note in suit for the balance of $1,673.90; that she proved the note against her husband's estate upon the advice of the commissioners; that she subsequently dismissed her first attorney and employed others; that there was never any consideration moving between the plaintiff and the defendant for the original five thousand dollar note or any renewals thereof or of the note in suit; that the defendant never had any benefit of the proceeds of said note and that she only signed it by way of surety for her husband's indebtedness to the plaintiff; that the defendant never authorized her husband to exchange her original five thousand dollar note for his, as the plaintiff's evidence tended to show was done, and that she never knew that such a transaction occurred until the time of the trial; that her husband never had any authority to dispose of her note in the way he did; that the note was not payable to him but was payable to the plaintiff itself.

At the close of all the evidence the court directed a verdict for the plaintiff for the amount due on the note on the ground that all the evidence showed no question to be submitted to the

jury and that as a matter of law the plaintiff was entitled to recover. The defendant excepted to the action of the court in ordering a verdict and rendering judgment thereon.

On the foregoing facts was the defendant entitled to go to the jury?

Defendant claims that there was evidence tending to show that the note created no obligation against her and that it was without consideration. Whether her contention is well founded depends upon her true relation to the transaction. It is argued that there was evidence for the jury tending to show that the obligation attempted to be created was that of surety for her husband's debt to the plaintiff, which the law forbids. If that is the legal effect of the transaction, it will not be doubted that she cannot be held liable (a) on the original note and its renewals because of the statute prohibiting a married woman from becoming surety for her husband's debt, P. S. 3039; nor (b) on the note in suit given after her husband's death in part payment of the last renewal note, because, if void, it furnished no consideration for her promise after she became sole. *Hayward* v. *Barker,* 52 Vt. 429; *Hubbard* v. *Bugbee,* 58 Vt. 172; *Valentine* v. *Bell,* 66 Vt. 280.

In directing the verdict for the plaintiff, the court, in effect, ruled that the evidence, if tending to show that the first note was given merely as collateral to the husband's debt, was rendered immaterial by her subsequent conduct in giving renewal notes and finally in paying part and giving the note sued on for the balance. Confessedly there was evidence tending to show that the original undertaking, whatever its form and legal effect, was, in essence, an undertaking of suretyship. The case states that defendant's evidence tended to show that after her husband had asked her to sign the original note and she had refused, plaintiff's representative came to her and prevailed upon her to sign it upon the understanding that it would be taken and held only as security for her husband's indebtedness to the bank, and that on the same understanding the note was renewed from time to time during the lifetime of her husband; so that there was evidence tending to show that defendant's relation to the transaction remained unchanged during the time covered by the several renewals all of which were made during the lifetime of her husband.

Considering the evidence in the light most favorable to the defendant, although the original note signed by the defendant and Gentili was in form a promise from the defendant to the plaintiff and on its face the defendant was maker and not surety, still it was signed with express understanding that it was to be held by the plaintiff only as security for Mr. Bertoli's existing indebtedness to satisfy the objections of the bank examiner; it was further agreed that the first money received by the bank on Mr. Bertoli's collections should be applied in payment of this note; no part of the proceeds of the note inured to the benefit of the signers; it was used, without the knowledge of the defendant, until after the final transaction in which the note in suit was given, to pay and discharge a portion of Mr. Bertoli's indebtedness to the bank; at the time of receiving the note the plaintiff knew that the defendant was wife of the principal debtor and that the note was signed by her for use as collateral security. On these facts was she undertaking to become surety for her husband's debts within the meaning of P. S. 3039?

The inquiry is not affected by the recent negotiable instruments act, as its provisions do not apply to negotiable instruments made and delivered prior to June 1, 1913. No. 99, Acts of 1912, §195. Prior to the passage of No. 140, Acts of 1884, relating to the property rights of married women, now embodied in P. S., chapter 147, a note executed by a woman while *femme covert* was held to be absolutely void at law. *Brown* v. *Sumner*, 31 Vt. 371; *Southworth* v. *Kimball*, 58 Vt. 337. By No. 140, Acts of 1884, the disability of a married woman to contract with others than her husband was removed so far as her sole and separate property is concerned, but with the special limitation that "nothing herein contained shall authorize a married woman to become surety for her husband's debts except by way of mortgage duly executed as now provided by law." This limitation is now contained in P. S. 3039.

In applying this limitation upon the right of a married woman to make contracts with any person other than her husband, we should take into consideration the extent of her disability before the act of 1884. As has been said, her contracts were absolutely void *at law*. In equity, however, she was deemed a *femme sole sub modo* in dealing with her separate estate. Her debts contracted in its management and for its benefit, or for her benefit on the credit of such estate, *in equity* were enforced

against such estate, whether personal or real, unless the instrument creating the estate protected it against being charged with such debts; but her general contracts not thus connected with and growing out of her separate estate, being void at law, were not, even in equity, enforced against such estate unless legally made a charge thereon; by mortgage, if real estate, or by pledge and delivery, if personal property. *Dale* v. *Robinson et al.,* 51 Vt. 20, 29; *Priest, Barber & Co.* v. *Cone et al.,* 51 Vt. 495. But in no case could she be held personally liable. The theory upon which recovery was had out of her separate estate was that the credit was given to the estate and not to the wife individually. There was no personal liability. *Sargent* v. *French,* 54 Vt. 384, 391. It follows that before the passage of No. 140, Acts of 1884, a married woman could not bind herself personally as surety for, or guarantor of, the debt of another, nor even in equity charge her separate estate by such an undertaking; for to charge her separate estate it was not enough to show her promise to pay the debt. It was necessary to show further that the debt for the payment of which the promise was made went to the benefit of her separate estate, or to her benefit on the credit of such estate. *Southworth* v. *Kimball,* 58 Vt. 331, 339. With this as a background, it remains to be considered how far the act of 1884 emancipated a married woman from the disabilities that the then existing law imposed upon her right to make contracts.

While, as was said in *Dietrich* v. *Hutchinson et al.,* 81 Vt. 160, 171, it is an enabling act and not a disabling or restrictive act, it was not the intention of the legislature to set a married woman wholly "free from the thraldom of the common law." It was designed to remove her disabilities so far, and so far only, as could safely be done without prejudice to the marriage relation. It was regarded as against public policy to permit the wife to contract with her husband, or to make contracts with others affecting her property in which the husband continued to have rights by virtue of the marital relation, viz.: property not held to her sole and separate use. As to such property she is still under the common-law disability. *Rowley et ux.* v. *Shepardson et ux.,* 83 Vt. 167; *Laird* v. *Perry,* 74 Vt. 454; *Hubbard* v. *Hubbard,* 77 Vt. 73; *Ainger* v. *White's Admr.,* 85 Vt. 446. For the same reason, it was also regarded as being unwise to permit her to make contracts with others by which she became

surety for her husband's debts except by way of mortgage. Nor do we look far to discover the reason for this limitation upon her right to make contracts. Dependence and natural feelings of trust and confidence arising from the marital relation unfit the wife to "deal at arm's length" with her husband, or with one seeking to fortify his claim against the husband, as is amply illustrated by what the defendant's evidence tended to show happened in this case. Our law makers thought, it seems, that the wife would be deterred from making improvident contracts of suretyship for her husband by requiring that such contract should be by way of mortgage only, thus warning her of the consequences of her act.

Such being the policy of the law, the courts should scan with jealous eye any attempt by indirection to accomplish what the law forbids. While freedom to contract with others than her husband with reference to her sole and separate estate, in the present state of the law, may permit a wife to borrow money on the credit of such estate with which to pay her husband's debts,—a question which we do not need to decide for such was not the case at bar,—the courts will look behind the mere form of the transaction to discover its true import; and if it appears that the spirit, if not the letter, of the statute abridging the power of the wife to contract is being infringed, it becomes their duty to afford her the protection that the law guarantees. As was said in *Field* v. *Campbell,* 164 Ind. 389, 72 N. E. 260, 108 Am. St. Rep. 301: "If it appears that an elaboration of outward details was, as both parties knew, but a cloak to cover an attempt to conclude a contract in violation of the statute, the indirection in method by which they have proceeded will not avail to save the transaction." Also in *Long* v. *Crosson,* 119 Ind. 3, 21 N. E. 450, 4 L. R. A. 783: "Whatever device may be resorted to for the purpose of evading the statute, if the person seeking to enforce the contract knew of, or participated in, the design, or purposely remained ignorant, courts will deal with the transaction according to its substance, regardless of the form in which it has been disguised."

In states where the common-law disability of a *femme covert* to contract still exists so far as to prevent her from becoming surety for her husband's debts the decisions are numerous and nearly all to the same effect. A few more recent cases are noticed to illustrate their trend.

20

An acknowledgement by a married woman of liability for advances made her husband, and her undertaking that the amount of such advances should be set off against her interest in certain lands, was invalid under Code 1896, §2529, providing that the wife shall not become surety for the husband. *Horton* v. *Hill*, 138 Ala. 625, 36 So. 465. Where a husband and wife executed a joint note as a basis of credit for goods to be furnished the husband in conducting his business, "and for things for her family," to be furnished out of the payee's store, the wife's relation to the note, as to the goods to be supplied, and which were supplied, to the husband for carrying on his business, was that of surety only. *Smith* v. *Hardman*, 99 Ga. 381, 27 S. E. 731. A wife who executed a mortgage on her homestead as additional security for notes executed by her husband was merely a surety as to the execution of the mortgage. *Lingenfelter Bros.* v. *Bowman*, (Ia.), 137 N. W. 946. Under Code §§1754, 1783, 5087, positively forbidding any assumption by a wife of the debts of her husband, if a creditor of the husband in any manner receives in payment of his debt money of the wife, knowing it to be hers, the wife can recover of him the amount so paid. *Lewis* v. *Howell*, 98 Ga. 428, 25 S. E. 504. A contract based on a mere colorable transaction to which the lender is a party and a wife the borrower, the purpose of which is to make the wife surety of the husband, will not be enforced against her. *Johnson* v. *A. Leffler Co.*, 122 Ga. 670, 50 S. E. 488. Where a married woman gave a note to one to whom her husband was indebted in satisfaction of the indebtedness, the wife was not the less a surety because of the fact that the note was given to one to whom the husband was then indebted. *Harbaugh* v. *Tanner*, 163 Ind. 574, 71 N. E. 145. A husband applying to a bank for a loan was refused, but was told that he could have it on a note with the wife as principal, or that the loan would be made to the wife. Upon the husband's afterward tendering the note signed by him and his wife with the wife's signature above his own, the proceeds of the note were placed to the husband's credit on the bank's books. The cashier of the bank knew that the husband was the only person to be benefited by the note, and the wife had nothing to do with the transaction except to sign the note; she neither having applied for a loan nor having been seen nor consulted by the bank. *Held*, that the loan was to the husband as principal, with the wife as surety. The device of placing the

wife's signature above the husband's would not evade the statute making the wife's estate not liable upon her contract to be another's surety. *Farmer's Bank of Wickliffe* v. *Beck*, (Ky.), 114 S. W. 1189. Where the husband and wife signed a note jointly, the word "Principal" appearing after the wife's name, when the fact was that the note was executed for the purpose of taking up a note executed by the husband with another as surety, the wife was surety merely, and was therefore not bound. *Postell* v. *Crumbaugh*, 23 Ky. Law Rep. 2193, 66 S. W. 830. A married woman cannot bind herself by a note given as surety for her husband in order to secure the payment of money nominally received by her, yet in fact, received for the use of her husband. *Feather* v. *Feather's Estate*, 116 Mich. 384, 74 N. W. 524, 4 Det. Leg. N. 1209. Where a loan is made to a husband, and he gets the money, and the land on which the deed of trust, signed by the husband and wife, is given, belongs to the wife, her position is that of surety to him. *Bruegge* v. *Bedard*, 89 Mo. App. 543. Under Pub. St. c. 176, §2, providing that no contract or conveyance by a married woman as surety for her husband, nor any undertaking by her in his behalf, shall be binding on her, a wife is not liable on a note given by her for money borrowed by her, and used to pay his note to the person from whom she borrowed the money, provided such payment was a part of the agreement whereby the money was loaned to her. *First Nat. Bank.* v. *Hunton*, 69 N. H. 509, 45 Atl. 351. Where goods were billed and receipted for in the husband's name, and the wife had nothing to do with ordering them, and there was no evidence that the sellers believed they were giving credit to her, she is not liable for the price because afterwards, when an attachment was about to be made against the husband, she agreed that she and her husband would pay for the goods if the attachment was forborne, since that only tends to prove a promise to pay to the debt of another, *Mitchell* v. *Miller*, 54 N. Y. S. 180, 25 Misc. Rep. 179. Where a husband is largely indebted to a bank of which he is president, and borrows money to pay the debt, and his wife, who is in no way responsible for it, gives her individual note, secured by bank stock, and her bond, secured by a mortgage, which is joined in by her husband, the wife is surety only for the debt of her husband. *Stewart* v. *Stewart*, 207 Pa. 59, 56 Atl. 323. Where one who had loaned a husband money took the note of husband and wife without having had negotia-

tions or communications with her as to the matter, he cannot invoke against her an estoppel to set up that she was a mere surety. *Ritter* v. *Bruss,* 116 Wis. 55, 92 N. W. 361.

The fact that the defendant signed the note, which, on its face, was a contract with the plaintiff apparently independent of her husband's indebtedness, does not preclude her from showing the true intent of the transaction. It is not necessary that she bring herself within the rules by which the rights of sureties are ordinarily determined. *Bradley Fertilizer Co.* v. *Caswell,* 65 Vt. 231. In the latter case it was held that it was always competent for a married woman who has signed a personal obligation with her husband to show that her relation to the obligation is that of surety. It is consistent with the policy of the law limiting her right to become surety for her husband's debts to permit her to show that a note signed by her in which her husband does not join is given as collateral security of her husband's indebtedness, when, as here, it appears that the other party to the note was cognizant of all the facts. Indeed, it seems that the case was tried in the court below upon this theory, as the evidence tending to support such claim was received without objection.

A satisfactory test as to whether the transaction was one of suretyship within the meaning of P. S. 3039 is whether the defendant received in person, or for the benefit of her estate, the consideration upon which the contract depends; and the question is to be determined, not from the form of the contract, nor from the basis upon which the transaction was had, but from its real purpose and effect. The defendant's evidence, if believed, presented a case clearly within the disabling statute and brought the knowledge of the facts home to the plaintiff. It follows that she was at least entitled to go to the jury. The questions of burden of proof and whether on the plaintiff's case she would have been entitled to a directed verdict are not presented, as these questions were not raised below.

The fact that the note was renewed several times and that the note in suit was given after the defendant became *sole* does not, as has already been seen, affect the defendant's liability. In the circumstances, any defence that could be made against the original note may be made against renewals thereof. *Tyler* v. *Anderson,* 106 Ind. 185, 6 N. E. 600. The last renewal note being void as to the defendant, the note sued on fails of con-

sideration, on the authority of our own cases cited above. The cases in this State cited by the plaintiff on the question of consideration are not in point, none of them involving the disability of married women to contract and they are entirely in harmony with our cases in which that question is ruled against the plaintiff's contention. The fact that she proved the note against her husband's estate does not affect her right to make this defence. While it might throw light upon her claim as to what the transaction in fact was, it would not, as the plaintiff contends, furnish consideration for the note and would not preclude her from asserting that the note was void.

Against defendant's objection and exception the court received in evidence a mortgage to the bank executed by Mr. Bertoli alone covering the homestead, the title to which was then in him. This mortgage was given more than six years before the first note signed by the defendant was delivered to the bank and secured past and future indebtedness of Bertoli to the bank. The mortgage was in force at the time said note was given. The mortgage was offered and received upon the theory that, in connection with the evidence of the surrender to Bertoli of indebtedness to the amount of the note given by the defendant, and with the offer to show further that after the note was given by the defendant she acquired title to the homestead by a series of conveyances without consideration, the surrender by the plaintiff to Bertoli of his notes secured by the mortgage for the wife's unsecured note furnished a consideration moving to the defendant for her note to the bank.

The plaintiff's contention cannot be sustained. Among other objections, the defendant insisted that the mortgage did not tend to show consideration for the note; and that was, so far as appears, its only materiality. At the time the original note was given title to the mortgaged property was in the husband. The only property interest she then had in the premises was a homestead interest, and as to that the mortgage was void, as she did not join in its execution. P. S. 2553; *Martin et ux.* v. *Harrington,* 73 Vt. 193. If it had appeared that she gave the note to relieve the mortgaged premises of so much of the indebtedness resting upon it (which did not in fact appear), it would not have benefited her separate estate, as there was no valid incumbrance resting upon it. The fact that she subsequently acquired title to the mortgaged premises relieved by so much of

the incumbrance placed upon it by her husband would not relate back to furnish consideration for the note, certainly unless it appeared that the note was given in contemplation of the subsequent transfer to her. On the case presented it was error to receive the mortgage.

On this question the transcript of the evidence was "referred to and made part of this exception." This reference is not sufficient to give the transcript standing as part of the bill of exceptions. It will not be permitted to contradict or override the statement of the bill unless made controlling. It is not enough to refer to it generally. *State* v. *Howard*, 83 Vt. 6, 24; *Lawson* v. *Crane and Hall*, 83 Vt. 115, 118; *Slack* v. *Bragg*, 83 Vt. 404, 412. This being so, we dispose of the question as it is presented in the exceptions.

As bearing upon the question whether the plaintiff accepted the original note in the way its evidence tended to show the defendant offered to show by its cashier that, "if the plaintiff took the note without any investigation of the parties or genuineness of the signature, it would appear that the whole thing was done merely for the purpose of collateral security, as the defendant claims, and to get rid of the complaint of the bank examiner." The offer was excluded to which the defendant was allowed an exception. This was not error. The offer was not to show facts but to elicit argument from the witness. If the offer had been to show that the bank made no such inquiries as a basis for argument, a different question would be presented, which we do not need to consider now, as the question is not raised by the exception.

The sworn statement of G. Gentili who signed the original note with the defendant by agreement was used as a deposition, reserving the right to object to matters of substance. Certain portions of this statement, on the plaintiff's objection, were excluded on the ground that the statements of Bertoli referred to in the deposition were not made in the presence of any of the officers of the bank, to which the defendant was allowed an exception. The case shows that the rejected statements were made by Bertoli to the witness and the defendant with no representative of the bank present. They were by way of inducement to secure the witness's signature to the note and were clearly hearsay and so properly excluded unless they fall within the rule that permits declarations of an agent made in the course of his

agency to be shown as part of the transaction. The rule invoked by the defendant requires that the utterance of the agent must have been made in and about the business on which the agent was employed and while actually engaged in that business. 3 Wig. §1797.

The defendant contends that Bertoli was the bank's agent to procure this note and that as such his declarations would be evidence against the plaintiff. Defendant says further that she had a right to show what authority Bertoli had and that she had no better way to do this than to show what he said to induce her and Gentili to sign the note.

As to the latter contention, it is enough to say that the fact of agency can not be shown by the mere acts and declarations of the alleged agent. *Prouty* v. *Nichols,* 82 Vt. 181, 72 Atl. 988. The case does not support the defendant's claim that Bertoli was acting as agent of the bank. On the plaintiff's case, if an agent, it was for the signers of the note to effect delivery, and the defendant's evidence did not present a case of agency. There being no other theory urged upon which this evidence was admissible, we hold that it was properly excluded.

*Judgment reversed and cause remanded.*