FIRST NATIONAL BANK OF MONTPELIER *v.* MARIA BERTOLI.

November Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed January 9, 1915.

*Bills and Notes—Husband and Wife—Surety for Husband— Liability of Wife—Evidence—Harmless Error—Erroneous Admission of Evidence—Homestead—Incumbrance—Validity—Exceptions—Construction of Record.*

Whether a married woman who with another executed a joint and several promissory note and renewals thereof, which note was used to pay her husband's debt, and who, after his death, paid from her own money a part of the last renewal note, and gave a new note for the balance, was a surety for her husband in the transaction, and therefore not liable, must be determined by her relation to the original note and renewals.

A married woman who with another executed a joint and several promissory note and renewals thereof, which note was used to pay her husband's debt, and, after his death, paid from her own money a part of the last renewal note, and gave a new note for the balance, could when sued on the new note, and in support of her defence that in the transaction she was a mere surety for her husband, show the circumstances surrounding the partial payment and the giving of the new note, to rebut the inference that the debt was her own, which might be drawn from the partial payment and the giving of the new note.

When she was sued on the new note that she gave for the balance, she could also show, in support of her defence that in the giving of the original joint and several note she was the mere surety for her husband, that her husband was then owing the payee a large sum of money.

Where the genuineness of the signature of the maker of a note sued on was admitted, any error in admitting testimony to the same effect was harmless.

The sole deed of a husband of his homestead not worth more than $500 is void.

Where a wife signed with her husband a mortgage of his homestead, but her name did not appear with his as a grantor, though she was suggested in the *testatum*, which was in the plural, the mortgage was in legal effect the sole mortgage of the husband.

Where land constituting a homestead of not more than $500 in value, incumbered by a mortgage executed by a husband alone, was conveyed by the husband and wife to a third person, who reconveyed it to them jointly, and thereafter the wife with another executed to the mortgagee a joint and several note that was used to pay the husband's debt, and wherein she claimed that she was a mere surety for her husband, she was not precluded from making that defence by the fact that upon the delivery of the note the mortgagee cancelled and surrendered an equal amount of her husband's notes secured by the mortgage.

On review the record will be construed most strongly against the exceptor, and a judgment will not be reversed by supplying facts not shown by a record so construed.

Where a married woman and a third person executed a joint and several note to a creditor of her husband in payment of the husband's debt, and renewed the same, but finally a renewal note was given by her alone, and after the death of her husband she paid out of her own money a part of the last renewal note and gave a new note for the balance, in an action on the new note the trier must determine whether in the transaction the wife was a mere surety for her husband, and on that issue it is immaterial whether the third person was cosurety with her for her husband, or a surety for her.

GENERAL AND SPECIAL ASSUMPSIT. Plea, the general issue. Trial by jury at the March Term, 1914. Washington County, *Slack*, J., presiding. Verdict and judgment for the defendant. The plaintiff excepted. The opinion states the case.

*Erwin M. Harvey* for the plaintiff.

*J. W. Gordon* and *S. Hollister Jackson* for the defendant.

POWERS, C. J. The evidence in the trial now under review tended to establish facts much like those shown in *First National Bank* v. *Bertoli*, 87 Vt. 297. So far as here required, these may be briefly restated as follows:

The defendant's husband owed a large debt at the plaintiff Bank; the defendant and one Gentili executed a $5,000 note, which Bertoli used to liquidate a part of this debt. This note was joint and several in form, and payable directly to the Bank; but in fact the defendant's undertaking was one of suretyship for her husband. The $5,000 note was renewed from time to time, and finally taken up by the defendant's sole note; this, in turn, was renewed several times, both before and after Bertoli's death; and finally the defendant paid a part of the note, and gave the note in suit for the balance.

At some time after Bertoli's death, the plaintiff's cashier called upon the defendant, and in the presence of her daughter, Mrs. Beigant, asked her to pay the note. She replied that it did not belong to her to pay the note and she was not going to pay it. Whereupon, the cashier said, in substance, that the note was hers to pay and if she did not pay it, the Bank would take her home. Mrs. Beigant gave evidence to much the same effect, with the further statement that the cashier made some reference to the insurance money that Mrs. Bertoli had received. This testimony referred to the $5,000 note and came in under the plaintiff's exception. It is now argued that it was wholly immaterial, and was prejudicial on account of its natural tendency to arouse the sympathy of the jury.

The ultimate fact to be determined by the jury was the true relation which Mrs. Bertoli occupied toward the indebtedness represented by the note in suit,—whether she was in fact a principal, or in fact a mere surety for her husband; and this question was to be determined by her true relation to the $5,000 note and its renewals. *First Nat. Bank* v. *Bertoli,* 87 Vt. 297. The fact that after Bertoli's death she paid a part of the last-named note with her own money, and gave the note in suit for the balance thereof, was a circumstance tending to show that that note represented her debt and not Bertoli's. And the jury could and probably would consider it in that light. To meet this, it was competent for the defendant to show the circumstances surrounding that transaction, and to give in evidence the cashier's statements, which were calculated in some degree to influence her action. The suggestion regarding her home was one which the jury might well have considered in determining the evidentiary importance of her conduct.

There was no error in admitting the testimony of the cashier that Bertoli, at the time the original $5,000 note was given, was owing the Bank a certain large sum of money. Manifestly, the defendant could not have been a surety for Bertoli unless he was a debtor; so it was essential, as one step in her defence, for the defendant to show that Bertoli was indebted to the Bank. That the sum was specified did not affect the question.

Subject to the defendant's exception, the plaintiff was allowed to show that the defendant had proved the claim growing out of this transaction against her husband's estate. Thereupon, subject to the plaintiff's exception, the defendant was allowed to explain why she did this. The admission of this was not error. The explanation seems to have been quite unnecessary, for the defendant, when she proved her claim, was only acting in strict accordance with her theory that she was a mere surety for Bertoli. And if such was the case, it was perfectly proper for her to prove the amount she paid on account of that suretyship against the estate of the principal. The explanation seems superfluous, but harmless.

If there was any error in admitting the testimony of the cashier regarding Mrs. Bertoli's signature, the genuineness of which was admitted, it was harmless. *Coolidge* v. *Taylor*, 85 Vt. 39.

The plaintiff offered in evidence a mortgage given by Bertoli to the Bank on January 16, 1902, covering the Staples property, so-called, then standing in Bertoli's name, and securing past and future indebtedness. In connection therewith the plaintiff offered to show that later on and before the original $5,000 note was given, what was left of the Staples property (a part having been released from the mortgage) was conveyed subject to this mortgage, by Bertoli and wife to a third person, and by that third person back to Bertoli and wife, jointly; that the Bank's mortgage thereon continued in force as long as Bertoli lived; that when the original $5,000 note was given, the Bank cancelled and surrendered the same amount in Bertoli's notes secured under this mortgage. The argument is that when Mrs. Bertoli first became bound, the Bank discharged notes secured on real estate in which she then had in interest, and of which she became the owner by right of survivorship, and that this fact made her note binding upon her. The offer was excluded and the plaintiff excepted.

At the former trial this mortgage and connected facts were admitted; and this was held error.    *First National Bank v. Bertoli*, 87 Vt. at p. 309.    The case before us, however, differs somewhat from the one then presented.    It then appeared that the transfer of the remainder of the Staples property through a third person to Bertoli and wife was after the original $5,000 note was given; it now appears that it was before that note was given.    The other trial showed that the Staples property was subject to a homestead right when the mortgage on it was given; and that fact sufficiently appears from the record before us; for the mortgage to the Bank and the deed to the third person, referred to in the offer and made a part of the bill of exceptions, so describe it.    It does not appear that it was worth more than $500.    Mrs. Bertoli signed and acknowledged the mortgage to the Bank of the Staples property; she is suggested in the *testatum*, for it is in the plural; but she does not appear therein as a grantor, and for the reasons given in *Dietrich* v. *Hutchinson*, 73 Vt. 134, it must be held that this mortgage was, in legal effect, the sole deed of the husband, and therefore void.    *First National Bank* v. *Bertoli*, 87 Vt. at p. 309.    This being so, though she acquired a different interest under the conveyance from the third person before the Bank surrendered Bertoli's notes in exchange for the $5,000 note, her property was not relieved of any burden by such surrender, for the reason that there was no legal burden resting upon it.    *Ib.*

Various questions are raised under the charge of the court, but the only one we need take any time with, in view of our former decision, is the claim that the surrender by the Bank of the joint and several note of the defendant and Gentili and acceptance of the defendant's sole note in lieu thereof afforded a sufficient consideration for the latter and made it and its renewals valid and binding.    This transaction, however, did not affect the defendant's liability to the Bank.    The true relation of Gentili to the original note and its renewals does not appear. In form, he was a joint and several promissor, and liable as such; but so far as Bertoli was concerned, he may have been, and most likely was a surety; and so far as Mrs. Bertoli was concerned, he may have been, and most likely was a surety rather than a cosurety.    Which facts may have been, and very likely were known to the Bank.    We cannot, to reverse a judgment, supply facts not shown by the record; and construing this record, as we are

bound to, against the plaintiff as the excepting party, it must be taken that Gentili was a surety for Mrs. Bertoli and not with her, and this was known to the Bank. It follows that dropping his name from the renewals did not affect her standing with the Bank, as she neither gained nor lost thereby.

*Judgment affirmed.*

### On Motion for Reargument.

Taylor, J. After the foregoing opinion was read and the judgment entered plaintiff moved that the judgment be stricken off and a rehearing granted for the following reasons: ''That the court has construed the record in said cause so as to infer the fact that the true relation of Gentili on said note was that of a surety as to both Harry Bertoli and this defendant; that this interpretation of the record is material and determinative; that such an interpretation was not brought to the attention of this plaintiff, was not presented by either party in argument, and this plaintiff has not been heard thereon.''

The claim that the surrender by the plaintiff of the joint and several note of the defendant and Gentili and the acceptance of the defendant's sole note in lieu thereof afforded a sufficient consideration for the latter and made it and its renewals valid and binding was fully presented at the hearing, both in plaintiff's brief and in oral argument; and the question has received due consideration. It is not suggested that counsel have not already exhausted the argument of this question. The point of the motion for reargument is that our decision that the transaction did not affect the defendant's liability rests upon inferences of the true relation of Gentili to the original note and its renewals, and that the possibility of such inferences being drawn from the facts disclosed in the record was not considered by counsel nor discussed at the hearing.

Without intending to approve of motions for rehearing based solely upon matters of fact such as are embodied in this motion, (*Van Dyke et al.* v. *Cole,* 81 Vt. 399; *Manning* v. *Leighton,* 66 Vt. 56), it is enough to say that the question to which the motion is directed is not ''material and determinative.'' Counsel misinterpret the language of the opinion. The reference to inferences to be drawn from the record concerning

Gentili's relation to the original note and its renewals should not be construed as equivalent to saying that that was the sole basis of the holding that the transaction referred to did not affect the defendant's liability to the bank. It should be understood as indicating what the court regarded as a sufficient reason for the holding.

A re-examination of the question presented by the motion would not affect the result, as the decision must be the same whatever Gentili's relation to the original note and its renewals may have been. While the original note on its face was the joint and several note of the defendant and Gentili, the claim was, and the jury by their verdict have found, that as a matter of fact it was such only in form; that as a matter of fact it was Bertoli's note to pay and that the defendant's relation to the transaction was that of surety merely. When sued on the note in question, the defendant gave notice that she would rely upon the protection afforded by the statute. This raised an issue of the defendant's real relation to the transaction evidenced by the original note and its several renewals. Whatever its form, it became the duty of the court to look behind the transaction to discover its true import; and finding that the spirit of the statute abridging the power of the wife to contract was being infringed, it was the duty of the court to adjudge the defendant's liability according to her true relation to the transaction. *First National Bank* v. *Bertoli,* 87 Vt. 297, 305.

Whether Gentili was a cosurety with the defendant for Mr. Bertoli, or a surety for the defendant, is, in the circumstances, immaterial so far as the defendant's liability is concerned. In any event, her relation to the note was that of surety for her husband. The substitution for defendant's sole note was made before Mr. Bertoli's death and while she was still disabled by the statute from becoming his surety. The surrender by the plaintiff of the joint note for defendant's sole note, with knowledge of the relation of the parties, did not change the defendant's real relation to the transaction. The debt remained the husband's to pay and she continued as his surety. By the substitution she received nothing in person nor for the benefit of her estate, which is the test of her relations to such a transaction. *First National Bank* v. *Bertoli,* 87 Vt. 297, 308.

*The motion for a rehearing is therefore denied.*